UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------- x
                                                  :
BENTHOS MASTER FUND, LTD.,                        :
                                                  :
                          Petitioner,             :
                                                  :   Case No.
            - against -                           :
                                                  :
                                                  :
AARON ETRA and                                    :
JANE DOE, A/K/A "TRACY EVANS,"                    :
                                                  :
                          Respondents.            :
------------------------------------------------- x

## PETITION FOR PRELIMINARY INJUNCTIVE RELIEF
## IN AID OF ARBITRATION

Petitioner Benthos Master Fund, Ltd. ("Petitioner" or "Benthos"), by its attorneys Kleinberg, Kaplan, Wolff & Cohen, P.C., hereby seeks preliminary injunctive relief against Respondents Aaron Etra, a lawyer and escrow agent, and Jane Doe a/k/a "Tracy Evans" pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure and Section 7502(c) of the New York Civil Procedure Law and Rules.

### SUMMARY OF THE ACTION

1.      Respondent Aaron Etra, a New York lawyer, is an Escrow Agent under a contract pursuant to which Petitioner paid $5 million into escrow and was to receive in return a quantity of Bitcoin. Etra released $4.6 million of Petitioner's money to recipients he refuses to identify; the Bitcoin has not been delivered; and the seller and guarantors have disappeared. Etra and his partners in crime, including respondent Tracy Evans, have told Petitioner that another (extra-contractual) $850,000 is needed before the Bitcoin can be released, and they have proffered a cascading series of dubious excuses involving a Russian named "Dmitri" and a "storage facility" operated by one "Minh Hoang Le" allegedly operating out of Dubai.

2. Astonishingly, the Escrow Agent Etra – a fiduciary and member of the bar through whose IOLA account flowed Petitioner's $5 million – has refused to answer <u>any</u> questions about where and to whom he sent the money, where the money is now, or the identity of the people involved; and indeed he and Evans have gone so far as to delete e-mail addresses when purporting to forward messages from the alleged storage location purportedly in control of the funds and the Bitcoin.

3. Petitioner hoped and tried to avoid litigation but has been stalled and deceived for too long now. Accordingly, this petition in aid of forthcoming arbitration is necessary to (i) restrain further disbursements or transfers of the $5 million Petitioner previously deposited into escrow, and (ii) obtain information about the flow of money and the identities of the individuals and entities who have not only breached their contractual obligations but appear to have engaged in a fraudulent scheme to steal and abscond with Petitioner's money.

## THE PARTIES

4. Petitioner Benthos, a private investment firm, is a Cayman Islands company with its principal place of business in San Francisco, California. Benthos specializes in Bitcoin and other cryptocurrency-based financial instruments.

5. Respondent Aaron Etra is an attorney licensed to practice law in New York with an office at 445 Park Avenue. Upon information and belief, Etra has been a member of the bar for more than 50 years and resides in Manhattan.

6. Upon information and belief, Respondent Evans resides at 280 Park Avenue South in Manhattan.

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a) because complete diversity exists and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1) and (b)(2) since Etra and Evans are both residents of this district and a substantial part of the events giving rise to this action occurred in this district.

## FACTUAL ALLEGATIONS

### The Bitcoin Agreement and Escrow Agreement

9.      In the summer of 2018, Benthos was introduced to respondent Etra through various connections in the cryptocurrency business, and Benthos's CEO met with Etra in Manhattan. Following that meeting and upon Etra's recommendation, Benthos entered into two interrelated agreements for the purchase of Bitcoin from a third party, with Etra acting as escrow agent for the transaction.

10.     The first contract (the "Bitcoin Agreement," Exhibit 1 at pp. 1-8[1]), was between Benthos, as Buyer, and an entity known as Valkyrie Group LLC as Seller, for the purchase of 10,000 Bitcoin, with the first "tranche" of the transaction being for $5 million worth of Bitcoin. Seller's principals were a father-and-son team named Hugh and Brandon Austin, who held themselves out to be brokers capable of locating third parties willing to sell quantities of Bitcoin.

11.     The Bitcoin Agreement, cross-referenced to an accompanying "Escrow Agreement" (Ex. 1, pp. 9-16), provided that within 24 business hours after execution, Benthos was to send $5 million – as it did – to the "IOLA account" of respondent Etra, acting as Escrow Agent under the Escrow Agreement.

---

[1] The cited exhibits are annexed to the accompanying Declaration of Gerald Gee-Ho Fong.

12. Etra's fee for serving as Escrow Agent was to be one percent of any funds deposited in the escrow, and specifically $50,000 for the first "tranche" (Ex. 1, p. 10).

13. The Bitcoin Agreement provided that the Seller "may pull out an amount of money from escrow in order to secure the [Bitcoin] from its [Bitcoin]-backed instrument" (Ex. 1, p. 7), while the Escrow Agreement provided that the Escrow Agent had the right to follow such instructions, "provided the Seller is doing so with the intention of securing the [Bitcoin] for the Buyer . . ." (Ex. 1, p. 12). Thus, under the contracts, the Seller Valkyrie possessed the sole right to direct release of money from escrow, provided the money was to be used by Valkyrie to obtain the Bitcoin that was to be delivered to Benthos.

14. Hugh Austin, the father of the Seller's principal, told Benthos's principals that both he individually and his company, Valhalla Venture Group LLC (an affiliate of the Seller), would guarantee contractually that if Benthos had not received its contracted-for Bitcoin within 15 business days of the release of the funds from escrow, he or Valhalla would return the $5 million to Benthos. The corresponding provision in the Escrow Agreement read as follows:

> It is understood that Valhalla, represented by Hugh Austin and his estate, will guarantee to make available to [Benthos] the sum of five million dollars USD, if and to the extent that [Benthos] has not received the [Bitcoin] for which it has provided the funds for this transaction within 15 business days . . . of such funds being removed from escrow[,] Valhalla or Hugh Austin will make this payment available to [Benthos] immediately after such period and without recourse.

(Ex. 1, p. 8)

15. Both the Bitcoin Agreement and the Escrow Agreement contained near-identical arbitration clauses providing for arbitration in accordance with UNCITRAL Rules, by a single arbitrator sitting in New York, New York.[2]

---

[2] See Ex. 1 at pp. 6 and 14. Petitioner expressly reserves, and does not waive, the right to argue (to an arbitrator or elsewhere) that it is not bound to arbitrate for a variety of reasons.

**Etra Sends $3 Million of Petitioner's Money Into a Void**

16. On or about August 6, 2018, Petitioner wired $5,000,000 to Etra's IOLA account, as per the wire instructions provided in the Escrow Agreement.

17. On the following day, $3,000,000 was evidently wired by Etra to an unknown account on August 7, 2018, purportedly for the purpose of obtaining Bitcoin from a "storage facility" for the Seller to deliver to Benthos.

**Etra and His Confederates
Then Demand An Additional $850,000 from Benthos
In Order to Deliver the Contracted-For Bitcoin**

18. Shortly after Etra released $3 million of Benthos's money out of escrow, Petitioner was informed, through an intermediary calling herself "Tracy Evans," that delivery of the Bitcoin would be delayed. The stated reason was that the end seller – *i.e.*, the source from which the Seller Valkyrie intended to obtain the Bitcoin Valkyrie had contracted to sell to Benthos – a purported Russian oligarch named "Dmitri," was unable to obtain release of fewer than 1,000 Bitcoin from the "storage facility" in any single transaction, and the price of 1,000 Bitcoin then exceeded $5,000,000, making it impossible for "Dmitri" to withdraw "only" $5,000,000 worth of Bitcoin.

19. Accordingly, per Evans, "Dmitri" claimed that the Bitcoin intended for Benthos could not be obtained until he had another $2,850,000, in addition to the $3,000,000 that had already been wired out of the escrow account by Etra. An e-mail purportedly from "Dmitri" and forwarded by Evans stated that "[t]he accurate amount to be sent is [an additional] $2,850,000.00, so the Buyer to send another $850,000 for a total of $5,850,000" (Ex. 2).

20. Of course none of that was in the Bitcoin Agreement, which obligated the Seller Valkyrie to deliver Bitcoin to Benthos in exchange for $5 million, not $5,850,000, and which

made no mention of "Dmitri," "Tracy Evans," a "storage facility" or any purported minimum requirement for the release of Bitcoin from such facility.

21. Evans purported to be acting as agent for "Dmitri" and claimed to be a longtime business acquaintance of Etra, who confirmed that he had worked with her for many years. Benthos's principals have spoken telephonically with a woman claiming to be Evans, who uses a 212 area code phone number, which is linked to an address (280 Park Avenue South) at which lives (or lived) a person by that name who (according to a public source) was previously stripped of her real estate license due to multiple felony convictions for defrauding the State of New York.

22. Benthos declined to send another, extra-contractual, $850,000 in order to supposedly obtain the release of the Bitcoin it had already contracted to purchase for $5,000,000.[3]

### Etra Sends Another $1.6 Million Of Petitioner's Escrowed Funds Into the Same Void

23. On August 24, 2018 – one business day before expiration of the contractual 15-day period in which the Bitcoin would be delivered or the guarantee to return the $5 million would be triggered – Etra appears to have wired another $1,600,000 (in addition to the $3 million of Benthos's $5 million previously released from escrow), to another unknown account. His explanation was that Dmitri had "enabled" him and Tracy to speak with the "transfer storage representative" to discuss what might be done to consummate the transaction "notwithstanding the lack of available additional funds [beyond the initial $5 million]. . . . [T]he gentleman said that he would use his best efforts to secure the delivery of [Bitcoin] . . . within some 16-18 hours if funds currently held in escrow were wired today" (Ex. 3).

---

[3] The colloquial phrase for that would be "throwing good money after bad."

24. Not surprisingly by that juncture, after the additional $1,600,000 of Benthos's money was transferred out of Etra's escrow account, Petitioner received nothing – not in "16-18 hours" and not at all.

### Petitioner Demands Return of its $5 Million, And Receives Nothing

25. On August 28, 2018 Benthos demanded the return of its $5 million – $4.6 million of which had been released by Etra to parts unknown, and $400,000 of which remained (upon information and belief) in escrow in Etra's IOLA account – from the Seller and/or the guarantors, because 15 business days had elapsed since August 7, 2018, the first day that funds were released from the escrow account by Etra, and Benthos had not received all or any portion of the Bitcoin for which it had contracted (Ex. 4).

26. The $5 million was not returned.

27. Instead, the following day, Evans forwarded a supposed message from the so-called "storage facility." The message stated, "Good Morning Ms Tracy. . . . As confirmed by our Account Department the funds arrived and I was so pleased and have set open the transfer windows, We expect results in the next 16 hours" (Ex. 5).

28. 16 hours later, Petitioner had received no Bitcoin, and it received none at any time thereafter.

29. On August 30, 2018, Evans forwarded another message purportedly from the storage facility representative, whom she now identified as "Mr. Hoang." An email message from "Minh Hoang Le" posted below Tracy's message stated cryptically:

> I have been in dubai to activate the payment delivery of the BTC and after exactly 13 hours and 20 minutes,there was an error detected: "Wallet Amputate amount not sufficient" Balance Amount of $940,250. I tried all my best to manipulate the digital system but the fire wall would not allow me break through the LIMIT set for minimum 1000 BTC and this had be done right from the day Mr Dmitri

7

> Kaslov the owner of the wallet gave a signed agreement for 3000 BTC, now the system is rejecting the current input amount.
>
> I need to reach out to Mr Dmitri Asap.

(Ex. 6 at p. 2)

30. Evans carefully deleted the purported e-mail address of Minh Hoang Le, and both she and Etra have refused repeated requests from Benthos to identify the "storage facility." They have provided shifting reasons for that ongoing refusal, including fear that Benthos would reach out directly to contact the purported facility to inquire into what is actually going on.

31. On August 31, 2018, Benthos through counsel demanded in writing, from the Seller and guarantors respectively, "the immediate delivery of the [Bitcoin] owed to Benthos under the [Bitcoin] Agreement or, in the alternative, the immediate return of the funds deposited by Benthos into the Escrow Account" (Exs. 7 and 8). Since then, Benthos has not heard from Hugh or Brandon Austin on behalf of the Seller or guarantors.

### Petitioner Requests Information and Documentation From Etra, and Receives Nothing

32. Also on August 31, 2018, Benthos's prior counsel wrote to the escrow agent Etra as follows (Ex. 9):

> Benthos demands that you immediately provide us with all details concerning the release of the Escrow Funds including but not limited to all banking and wire instructions, the identity, address and bank account information of all recipients of any portion of the Escrow Funds, all communications between or among you, Valkyrie Group LLC, Valhalla Venture Group LLC, Brandon Austin and Hugh Austin or any of their affiliates or representatives concerning the [Bitcoin Agreement] or monies held in escrow. Please also provide any information in your possession, custody or control regarding (i) the storage capacity housing the [Bitcoin] and the instrument backed by the [Bitcoin] and (ii) Mr. Dmitri, including full name, address and passport information.

33. Notwithstanding his status as an Escrow Agent, and therefore a fiduciary, and as a New York lawyer who had received and disbursed escrow funds into and out of his IOLA account, Etra refused to provide <u>any</u> of the information and documentation sought by Benthos.

8

34. Instead, he defiantly informed Benthos's then-counsel that "your actions and demands will require me to engage counsel, whose costs and expenses will be for the account of your client who has precipitated the need for my doing so.  I will be calling on your client to meet these obligations, including any retainer from said counsel, before proceeding further" (Ex. 10 at 3).

35. Benthos's counsel responded (Ex. 10 at pp. 2-3):

Given the current circumstances, which indicate possible fraudulent activity, you cannot release any escrowed funds.  You have obligations to the Buyer here, who clearly has been victimized.

In addition, the terms of your escrow appear to be unconscionable, as no escrow agent in these circumstances can justify the fee you purport to charge [$50,000].  As an attorney, I trust you are aware of your professional obligations. . . .

. . . We suggest that you work toward getting the Seller to honor its obligations rather than your own self interest.

36. In reply (Ex. 10 at p. 5), Etra characterized Benthos's eminently reasonable requests as "completely unconstructive" and then complained that he was being e-mailed "on a legal holiday" (Labor Day).  In any event, he still provided no information and no documents concerning his disbursements from the escrow fund and the parties with whom he was claiming to be dealing.

### The Escrow Agent Etra, the Elusive Tracy Evans, the Mysterious Minh Hoang Le and "Dmitri" Continue to String Petitioner Along For Several More Weeks

37. Following Etra's early-September refusal to respond to Benthos's requests for documents and information, there ensued a series of increasingly convoluted and decreasingly credible excuses, explanations and promises from Etra, Evans and Minh Hoang Le (who was supposedly traveling between Dubai and Sydney and had "so many other jobs at hand" that he

was only intermittently available). During that period the Austins (meaning the Seller and the guarantors) simply went silent and disappeared, as noted above.

38. Those stories (reflected in phone conversations and detailed e-mails with which petitioner will not burden the court) involved primarily a purported "second buyer" – unidentified, of course – supposedly coming in to provide the additional $850,000 allegedly required to obtain release of the Bitcoin for delivery to Benthos in compliance with the already-breached Bitcoin Agreement.

39. More recently, after Benthos retained litigation counsel and threatened court action, the promises became more frantic and more specific, and the timeframe for purportedly consummating the transaction became imminent – but (surprise) the promises were not fulfilled.

40. Specifically, by way of example only, on Monday, October 1, Etra assured petitioner, through his lawyer, that things would be "resolved one way or another" (meaning delivery of the Bitcoin or return of the $5 million) "by the end of this week" (i.e., by October 5). On Tuesday the 2nd, Etra reiterated, again through his lawyer, that the transaction would be completed "this week," which was then updated to "within 48 hours"; and petitioner was told that Etra had a "signed contract" – which, of course, no one would allow petitioner actually to see – from the "second buyer" (a "woman," unidentified of course), who was supposedly providing "additional financing to complete the whole deal," "probably tomorrow [Wednesday, October 3], at the latest Thursday [October 4]."

41. On Wednesday the 3rd, Tracy Evans confirmed to Benthos directly that "the woman signed" the commitment to pay the additional $850,000. On Friday the 5th, she told Benthos that the second buyer was "aiming to wire today." On Monday the 8th, she said the wire had been "initiated" on Friday the 5th into Etra's IOLA account, but would "not be received until

Tuesday" and that Etra would send the money to the storage company (to get the Bitcoin released) "on Wednesday [the 10th]."

42. On Wednesday the 10th, Evans reported that the funds still had "not arrived."

43. At that point Benthos asked Evans (who previously had refused to send the actual purported contract committing the "second buyer" to send money to the storage company) to at least confirm in writing that there was such a buyer who actually had signed such a contract. Dropping all pretense that Aaron Etra is not orchestrating all of these machinations, she replied that she would "ask Aaron" about doing so.

44. No such written confirmation was forthcoming. But on Friday the 12th, Etra told Benthos directly that he had been "frequently talking with" the purported second buyer, except that now Etra identified that "second buyer" as a man ("he"), whereas previously the "second buyer" had been said to be "a woman" (see paragraphs 40 and 41 above). In any event Etra told Benthos that the additional funds required to obtain release of the Bitcoin – funds which, it should not be forgotten, had previously been stated to have been sent on Friday the 5th – "should be sent on Monday [the 15th]."

45. After all of that, Benthos asked Etra to identify the purported "second buyer" by name, or to provide some information about that individual and his or her supposed contract. No surprise by now: Etra refused.

### Etra Continues To Stonewall Petitioner's Renewed Requests for Documents and Information

46. Four weeks after first requesting documents and information from Etra and getting nowhere, Benthos tried again, in a letter from its litigation counsel to Etra's lawyer, to obtain information as to the status and whereabouts of the escrowed funds (Ex. 11):

> 1. Of the $5 million deposited by our client into Mr. Etra's escrow account pursuant to the Escrow Agreement, how much, if any, is Mr. Etra presently

holding in escrow, and is he willing to return those remaining funds to our client upon demand?

2.      If Mr. Etra is holding money in escrow and is not willing to return it to our client upon demand, is he willing to commit in writing not to transfer any of that money without our client's written consent (or a court order)?

3.      Identify all transfers or disbursements made to date from the $5 million escrowed with Mr. Etra, including at a minimum (i) the recipients of each transfer, (ii) the amount transferred on each occasion, (iii) the written instructions upon which each transfer was made, (iv) written confirmation of each transfer, and (v) the bank account information and wire transfer information (if any) associated with each transfer.

47.     Etra refused to answer any of those questions.

48.     Benthos subsequently reiterated its requests on a counsel-to-counsel basis on several occasions, all to no avail.

49.     Thus Etra continues – notwithstanding that he is a fiduciary, a licensed New York attorney and an Escrow Agent who disbursed funds from his IOLA account to unidentified recipients – to refuse to provide basic information to the party that sent him $5 million in escrow funds (except that his counsel has confirmed orally that Etra still has $400,000 of those funds, which he has refused to commit not to disburse further and which could therefore be sent into the void at any moment).

### Petitioner Formally Terminates the Escrow Agreement

50.     On October 12, 2018, Petitioner sent a Notice of Termination of Escrow to Etra and to the Seller (Valkyrie) in accordance with the notice provisions of the Escrow Agreement, terminating said Agreement effective immediately and (again) demanding return of Petitioner's funds (Ex. 12).

51.     None of Petitioner's funds – including the $400,000 said to be retained by Etra in his escrow account – have been returned, nor have Etra and/or the Seller stated that they will be

returned, notwithstanding that those parties are required to return all of the $5 million if the transaction does not settle and Petitioner terminates the Escrow Agreement.

## Conclusion

52.    More than two months have now passed since the bulk of Petitioner's funds were transferred out of the escrow account by Etra, and Petitioner still has not received its Bitcoin. Well over a month has passed since Petitioner's $5 million was supposed to be returned if the Bitcoin had not been delivered. On a daily basis, Etra and Evans offer new (and old) excuses, explanations and promises, but nothing ever materializes. The Austins do not respond to inquiries, while "Dmitri" and "Minh Hoang Le" are shadowy and unreachable, held at a distance by Evans, evidently at Etra's instructions. <u>And Aaron Etra persists in refusing to disclose anything about the destination or whereabouts of Petitioner's $4.6 million that he transferred out of escrow, or about the people to whom he apparently entrusted Petitioner's escrowed funds</u>.

53.    Beyond the breach of the Bitcoin Agreement by the Seller and guarantors, and beyond Etra's breach of his obligations as Escrow Agent, it is by now hard to escape the conclusion that Benthos has been victimized by a fraudulent scheme, at the center of which appear to be Etra and Evans, New Yorkers whose relevant misconduct has taken place in this State.

54.    Petitioner intends to commence an arbitration against Etra and some or all of his co-conspirators who have helped him defraud Benthos and breach the contracts which Benthos will seek to enforce. The relief sought in this petition is necessary, as set forth in further detail in the accompanying memorandum of law, to (i) preserve the status quo, by temporarily restraining Etra from disbursing the $400,000 he still holds in escrow; and (ii) help ensure that any arbitration award will not be ineffectual, by requiring Etra and Evans to disclose critical information including where the $4.6 million stolen from Petitioner was sent, and where it is

now, such that Petitioner can seek to recover it and/or try to prevent its further dissipation and removal from the reach of the law.

## PRAYER FOR RELIEF

**WHEREFORE,** Petitioner seeks a preliminary injunction pursuant to Rules 64 and 65 of the FRCP and 7502(c) of the CPLR as follows:

1. Enjoining and restraining respondents Aaron Etra and Tracy Evans and their agents, servants, employees, attorneys, and all persons in active concert and participation with them, from directly or indirectly transferring or continuing to transfer any portion of the $5 million previously deposited by Benthos into Etra's IOLA account pending further order of this Court, or of a duly-constituted arbitral authority, or the written consent of Benthos;

2. Directing respondent Aaron Etra to disclose within 48 hours the following information regarding transfers or disbursements made to date from the $5 million deposited by Benthos into Etra's IOLA account:

    a. the recipients of each transfer,

    b. the amount transferred on each occasion,

    c. the written instructions upon which each transfer was made,

    d. any written confirmation received of each transfer,

    e. the bank account information and wire transfer information (if any) associated with each transfer,

    f. the identities, if known to Etra, of any subsequent recipients of Benthos's escrowed funds pursuant to any transfers made of such funds by Etra's transferees, and

    g. the current or last known whereabouts of the said previously-escrowed funds;

3. Further directing respondent Aaron Etra to disclose within 48 hours the following information regarding the identity of respondent Tracy Evans:

  a. any other names by which Evans has identified herself;

  b. her current or last known home address;

  c. her current or last known employer or business with which she has been affiliated, the names of any principals of said entity, and its business address and website;

  d. all telephone numbers known to Etra to have been used by her;

  e. all e-mail addresses known to Etra to have been used by her;

4. Further directing respondent Aaron Etra to, within 48 hours:

  a. provide copies of all communications between and among any of himself, Valkyrie Group LLC, Valhalla Venture Group LLC, Brandon Austin, Hugh Austin, Tracy Evans, "Dmitri," and Ming Hoang Le, or any of their affiliates, representatives and/or agents, concerning the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Benthos into Etra's IOLA account;

  b. disclose the full name of Dmitri, as well as any other names by which he has identified himself, and his home and business addresses and all of his phone numbers and e-mail addresses known to Etra; and

  c. disclose the name, address, telephone number, website and identities of principals of any storage company at which any of the funds deposited into escrow by Benthos, or any Bitcoin intended for Benthos, has been held; and

5. Directing respondent Tracy Evans to disclose within 48 hours:

  a. the full name of Dmitri, as well as any other names by which he has identified himself, and his home and business addresses and all of his phone numbers and e-mail addresses known to her;

  b. the name, address, telephone number, website and identities of principals of any storage company at which any of the funds deposited into escrow by Benthos, or any Bitcoin intended for Benthos, has been held;

  c. the identities, if known to Evans, of any subsequent recipients of Benthos's escrowed funds pursuant to any transfers made of such funds by Etra's transferees; and

  d. the current or last known whereabouts of the said previously-escrowed funds;

together with such other and further relief as the Court shall deem just and proper under the circumstances, including the costs and disbursements of this petition and the reasonable attorneys' fees incurred in connection therewith.

Dated: October 15, 2018

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By: _____
Steven R. Popofsky
Joshua K. Bromberg

551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone: (212) 986-6000
Facsimile: (212) 986-8866
Email: spopofsky@kkwc.com
Email: jbromberg@kkwc.com

Attorneys for Petitioner
**BENTHOS MASTER FUND LTD.**