**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                     :

**BENTHOS MASTER FUND, LTD.,**
                     :

                     :    Case No. 18-cv-9401 (DAB)

               Petitioner,    :

                     :

         - against -       :

                     :

**AARON ETRA**
**and JANE DOE, A/K/A "TRACY EVANS"**  :

                     :

             Respondents.  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

---

### PETITIONER'S MEMORANDUM OF LAW IN SUPPORT OF ITS  MOTION TO HOLD RESPONDENT AARON ETRA IN CIVIL CONTEMPT AND AWARD SANCTIONS

---

 

KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
551 Fifth Avenue, 18th Floor
New York, New York  10176
Telephone:    (212) 986-6000
Facsimile:    (212) 986-8866

Attorneys for Petitioner
    **BENTHOS MASTER FUND, LTD.**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................................ii

PRELIMINARY STATEMENT ..........................................................................................1

ARGUMENT.........................................................................................................................2

I.       ETRA SHOULD BE HELD IN CONTEMPT AND SANCTIONED FOR HIS
         WILLFUL FAILURE TO COMPLY WITH THE COURT'S ORDERS.................................3

II.      ETRA SHOULD ALSO BE SANCTIONED FOR HIS TRANSPARENT
         ATTEMPTS TO MISLEAD THE COURT .....................................................................7

CONCLUSION .....................................................................................................................9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Interstate Commerce Commission v. Brinson,*
 154 U.S. 447 (1894)..................................................................................................2

*Liberty Propane LP v. Feheley,*
 522 Fed. Appx. 38, 39 (2d Cir. 2013)......................................................................3

*Macolor v. Libiran,*
 2015 US Dist LEXIS 34010 (S.D.N.Y. Mar. 18, 2015) (Furman, J.) ......................8

*Middleton v. Green Cycle Hous., Inc.,*
 2017 BL 56147 (S.D.N.Y. Feb. 22, 2017) (Cote, J) ................................................7

*NY State Nat. Org. for Women v. Terry,*
 886 F.2d 1339 (2d Cir. 1989)...................................................................................3

*Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,*
 369 F.3d 645 (2d Cir. 2004)..................................................................................3, 6

*United States v. Daugerdas,*
 867 F. Supp.2d 445 (S.D.N.Y. 2012) (Pauley, J.) ...................................................8

**Statutes and Rules**

18 U.S.C. § 401...............................................................................................1, 2, 6, 8

Local Civil Rule 83.6........................................................................................1, 2, 7, 9

Petitioner Benthos Master Fund, Ltd. ("Petitioner" or "Benthos") respectfully submits this memorandum of law in support of its motion pursuant to 18 U.S.C. § 401, Local Civil Rule 83.6 and this Court's inherent authority, to hold Respondent Aaron Etra ("Etra") in civil contempt and to award sanctions, including but not limited to attorneys' fees for the bringing of this motion.[1]

To avoid unnecessary repetition, the Court is respectfully referred to the accompanying Declaration of Joshua K. Bromberg dated November 20, 2018 ("Bromberg Dec.") with its accompanying exhibits, as well as the Petition for Preliminary Injunctive Relief in Aid of Arbitration (Dkt. 1) (the "Petition") for the salient facts and cited documents.[2]  A transcript of the Hearing held before this Court on November 15, 2018 (the "Hearing Tr.") is annexed to the Bromberg Declaration as Exhibit A for the court's ready reference.

## PRELIMINARY STATEMENT

An order of contempt and sanctions should be imposed against Mr. Etra, an escrow agent who disbursed $4,600,000 of Petitioner's escrowed funds without proper authority and, for months, has resisted all calls to provide information as to what he did with Petitioner's money and thereby assist in seeing it returned to Petitioner.  Now, in an effort to protect himself and his confederates in what appears to be a fraudulent scheme, Etra has flouted the clear and unequivocal orders of the Court that, in aid of a forthcoming arbitration, he produce "all communications between and among any of himself, Valkyrie Group LLC, Valhalla Venture Group LLC, Brandon Austin, Hugh Austin, Tracy Evans, 'Dmitri,' and Ming Hoang Le, or any of their affiliates, representatives, and/or agents, concerning the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Benthos

---

[1]     Respondent Tracy Evans, although she was previously in contempt of Court and will eventually be made party to litigation and/or arbitration for her involvement in the actions set forth in the Petition (Dkt. 1), appears to have provided all of the information that the Court ordered and is therefore not a subject of this Motion.  Petitioner expressly reserves and does not waive its rights to seek further relief from Evans in the course of this proceeding.

[2]     Capitalized terms not defined herein shall have the meanings ascribed to them in the Bromberg Declaration and/or the Petition, as appropriate.

into Etra's IOLA account[.]" (Dkt. 4 at ¶ 4(a)) (emphasis added).  All of Etra's communications with those persons are urgently needed to locate, restrain and recover whatever remains of the $4,600,000 of Petitioner's money that Etra sent, without authorization, to the overseas bank account of a stranger to Petitioner's contract for the purchase of Bitcoin.  *See* Bromberg Dec. ¶ 23 and Exs. D, E.  To date, <u>Etra has produced only minimal information and has not produced a single communication between himself and the person or persons he purportedly sent the money to, nor the person or persons who purportedly instructed him to send the money</u>.

Etra should be jailed and/or fined until he has (i) produced <u>all</u> of the communications that the Court has repeatedly ordered him to produce, as detailed in the Order to Show Cause (Dkt. 4); (ii) certified under penalty of perjury that all of the documents ordered by the Court to be produced have, in fact, been produced; and (iii) submitted to a deposition under the auspices of the Court, so that Petitioner can test his representations (thus far false) that he has complied with the Court's orders.  Independently, Etra should be sanctioned by the Court for his misrepresentations to the Court during the Hearing on November 15, 2018, and pursuant to Local Civil Rule 83.6, the Court should award Petitioner its reasonable attorneys' fees as damages for Etra's ongoing contempt, which unfortunately necessitated the bringing of this motion.

## <u>ARGUMENT</u>

A court's power to punish contempt is an inherent and integral element of its power to assert its authority by order or decree.  *Interstate Commerce Commission v. Brinson,* 154 U.S. 447 (1894). The inherent power of the Court to punish contempt of its authority is tempered by 18 U.S.C. § 401, which provides as follows:

A court of the United States shall have power to punish by fine or imprisonment, at its discretion, such contempt of its authority, and none others, as —

(1) Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice;

2

(2) Misbehavior of any of its officers in their official transactions;

(3) Disobedience or resistance to its lawful writ, process, order, rule, decree or command.

The purpose of a civil contempt proceeding is to coerce compliance with the orders of the court and/or to compensate complainant for losses sustained by the contemnor's conduct. *Paramedics Electromedicina Comercial, Ltda v. GE Med. Sys. Info. Techs., Inc.,* 369 F.3d 645, 657 (2d Cir. 2004). Coercion may be achieved by imprisonment of the contemnor until they purge themselves of the contempt, and/or by a prospective, conditional fine. *Id.; NY State Nat. Org. for Women v. Terry,* 886 F.2d 1339, 1351 (2d Cir. 1989). "The imposition of civil contempt sanctions may serve dual purposes: to secure future compliance with court orders and to compensate the party that has been wronged." *Paramedics,* 369 F.3d at 657.

## I. ETRA SHOULD BE HELD IN CONTEMPT AND SANCTIONED FOR HIS WILLFUL FAILURE TO COMPLY WITH THE COURT'S ORDERS

"A party may be held in civil contempt for failure to comply with a court order if (1) the order the contemnor failed to comply with is clear and unambiguous, (2) the proof of noncompliance is clear and convincing, and (3) the contemnor has not diligently attempted to comply in a reasonable manner." *Paramedics,* 369 F.3d at 655. "A clear and unambiguous order is one that leaves no uncertainty in the minds of those to whom it is addressed." *Liberty Propane LP v. Feheley*, 522 Fed. Appx. 38, 39 (2d Cir. 2013).

Here, the Court's directive in the October 19 Order (Dkt. 8) that Etra "shall submit all information ordered in the Temporary Restraining Order on or before Friday, October 26, 2018 at 5:00 p.m." was clear and unambiguous. There is no question that Etra had notice of that order – he appeared at the rescheduled hearing date set forth therein – and Etra has never claimed to have been uncertain as to what the October 19 Order required. Etra did not respond in any way to the October

19 Order prior to the court's specified deadline of October 26, 2018 at 5 p.m., much less attempt to "diligently" comply with the order.  He simply ignored it.

At the Hearing held on November 15, 2018, the Court again ordered Etra to provide all of the documents and information set forth in the October 15, 2018 Order to Show Cause (Dkt. 4).  *See* Hearing Tr. at 20:11-16 ("THE COURT: Now, based on what I have seen so far it looks very likely that a motion to hold you in civil contempt will be granted. So, it seems to me it's in your interest – as I said earlier, you hold the keys. You don't want to go to jail, you tell them everything that you were supposed to tell them weeks ago.")  Etra's response was grossly deficient.

Not only has Mr. Etra failed to adequately explain where he sent Petitioner's $4,600,000, why and on whose authority, he has failed to produce copies of <u>any</u> communications "between and among any of himself, Valkyrie Group LLC, Valhalla Venture Group LLC, Brandon Austin, Hugh Austin, Tracy Evans, "Dmitri," and Minh Hoang Le, or any of their affiliates, representatives, and/or agents, concerning the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Petitioner into Etra's IOLA account."  Dkt. 4 at 3.

Apart from 16 pages of emails to which Petitioner was already privy, Mr. Etra has produced no communications between himself and Valkyrie Group LLC or Valhalla Venture Group LLC, or their alter egos, Brandon and Hugh Austin, notwithstanding that the Austins introduced Etra to Petitioner in the first place.  He has produced no communications with Evans, who has coordinated with him for months to assure Petitioner that its transaction is on the verge of being consummated, while refusing to provide any documents or concrete information.  He has not produced a single communication between himself and "Dmitri Kaslov" – a stranger to the transaction between Petitioner and Valkyrie, and on whose purported authority Etra admits to having sent $4,600,000 of Petitioner's money into a void, never to be seen again.   Nor has Etra produced a single communication between himself and the mysterious "Ming Huang Le," the purported "Storage

4

Facilitator" for Mr. Kaslov, to whose shadowy Hong Kong company "HK Zhixuan Trading Limited" Mr. Etra claims he sent the money.  *See* Bromberg Dec. Exs. D, E.  Of course, by refusing to produce his private emails with these persons, Etra is protecting all of them, and himself. [3]

The Court should take note of the fact that Petitioner's previous counsel demanded these communications as early as August 31, 2018 (*see* Petition at ¶ 32), and its present counsel again requested information on September 28, 2018 (*see* Petition at ¶ 46) and throughout that time Etra (in plain violation of his ethical and fiduciary obligations as a New York attorney and escrow agent) stonewalled Petitioner, providing no information whatsoever (nor returning any portion of Petitioner's money after it was demanded on October 12, 2018).  Even after the Order to Show Cause was signed by Judge Castel on October 15, 2018 and this Court's order was signed on October 19, 2018, Etra continued to steadfastly resist Petitioner's efforts to obtain information, and it was only after the Court threatened Mr. Etra with jail on November 15, 2018 that he produced a smattering of emails – 16 pages in total, every single one of which was an email to or from Petitioner, <u>and therefore of no assistance whatsoever to Petitioner in aid of arbitration</u>.

Incredibly, only two of these emails post-date August 31, 2018 (even though, for the course of two and a half months subsequent to that date, Etra has purportedly been in contact with various third persons in an effort to consummate the Petitioner's transaction by locating a "new buyer") and the emails themselves indicate the existence of additional communications that have been withheld by Etra.  *See, e.g.,*  Bromberg Dec Ex. F, Email from Aaron Etra to Gerald Fong dated October 8, 2018 at 2:42 P.M. ("With respect to the new buyer, the arrangement relevant to Benthos is that such buyer has required that the Escrow Agent have control over the wallet which receives the [Bitcoin] in order to ensure delivery to such buyer.  <u>Valkyrie has agreed to give the Escrow Agent such</u>

---

[3]     Notably, Etra inquired at the Hearing as to whether he could withhold "private" documents (*See* Hearing Tr. at 23:10-13) and despite the Court's incredulous response, he appears to have attempted to do so.

control for the delivery of all [Bitcoin], which includes the [Bitcoin] to which Benthos is entitled for the funds it has provided.") (emphasis added);  Bromberg Dec. Ex. F, October 12, 2018 email from Aaron Etra to Gerald Fong dated October 12, 2018 at 9:16 P.M. ("I have asked Valkyrie for instructions regarding the request […] from you and your lawyer to send back the remaining escrowed funds, as, pursuant to your agreement with Valkyrie, instructions regarding such funds needs to come from Valkyrie.") (emphasis added)[4] Plainly, neither of the referenced communications with Valkyrie has been produced by Etra, in violation of the Court's orders. Indeed, Etra has produced no communications whatsoever evidencing his purported efforts to consummate the transaction which, by his own admission, continued through the date of the Hearing.  *See* Hearing Tr. at 6:24-7:2 (claiming that under Petitioner's contract with Valhalla Group, "they do want the consummation of the transaction and they do want us to continue to do our work, and that's what we have been diligently doing and focusing our energy on that.")

Based on the foregoing, Petitioner has provided "clear and convincing" proof that Etra has not "diligently attempted to comply in a reasonable manner" with the Court's repeated orders. *Paramedics,* 369 F.3d at 655.  Petitioner has thus demonstrated that a finding of civil contempt and severe sanctions are warranted.  Pursuant to 18 U.S.C. § 401, Local Civil Rule 86.3 and this Court's inherent authority, Etra should be incarcerated and/or required to pay a daily fine in an amount to be determined by the Court until he has provided all of the requested documents, without exception. Moreover, Etra should be required to certify that all documents required by the Court's orders have finally been produced, and to submit to a deposition so that Petitioner can test his representations (thus far false) that he has complied with this Court's orders.

---

[4]     Mr. Etra's apparent reluctance to transfer $400,000 of Petitioner's money back to Petitioner without express written instructions from Valkyrie is starkly at odds with his apparent willingness to transfer $4,600,000 of Petitioner's money to "HK Zhixuan Trading Limited" on the instructions of "Dmitri Kaslov" (*See* Bromberg Dec. Ex. E) without any authorization whatsoever from Valkyrie.

Additionally, pursuant to Local Civil Rule 83.6, Etra should be held liable for the damages, including Petitioner's attorneys' fees, occasioned by his contempt. *See* Local Civil Rule 83.6 ("A reasonable counsel fee, necessitated by the contempt proceedings, may be included as an item of damage."); *Middleton v. Green Cycle Hous., Inc.,* 2017 BL 56147 (S.D.N.Y. Feb. 22, 2017) (Cote, J) (awarding $722,095.80 in attorneys' fees and costs under Local Civil Rule 83.6, finding that "the number of hours expended by [movant's] attorneys on this case was reasonable in light of [contemnor's] evasive and contumacious conduct.")

## II.  ETRA SHOULD ALSO BE SANCTIONED FOR HIS TRANSPARENT ATTEMPTS TO MISLEAD THE COURT

In addition to continued withholding of documents that the court has ordered to be produced, Mr. Etra should be sanctioned for his misrepresentations and attempts to mislead the Court.

First, Mr. Etra attempted to obtain an adjournment by presenting an email purportedly from his counsel (*see* Bromberg Dec. at ¶ 10) although that person had never appeared. *See* Hearing Tr. at 4:12-21.  Indeed, Mr. Etra's so-called counsel, Michael Hess, had telephoned Petitioner's counsel the previous day and gone to great lengths to communicate that he did <u>not</u> represent Mr. Etra and did <u>not</u> intend to make an appearance on Etra's behalf (and he still has not done so).  *See* Bromberg Dec. ¶¶ 19-21; Hearing Tr. at 3:11-4:11.  Moreover, Mr. Hess gave no indication that he was sick when he initiated the telephone call to Petitioner's counsel on November 14 (Bromberg Dec. at ¶ 21), yet Mr. Etra averred to the Court the very next day that Mr. Hess "as of yesterday [...] <u>was completely laid low and has been unable to even communicate except via email</u> and asks your Honor for an adjournment for several days…"  (Hearing Tr. at 2:10-14).  Of course, Etra made no attempt to explain why Mr. Hess could not simply email the Court directly.  The Court wisely refused to accept Etra's dog-ate-my-homework excuse and required him to proceed *pro se*. However, Etra's attempt to obtain an adjournment by deceiving the Court should not be excused.

Second, Mr. Etra should be sanctioned for his attempt to mislead the Court and excuse his noncompliance with the Court's orders by asserting that he has remained in contact with Petitioner (notwithstanding that he is an attorney and Petitioner is represented by counsel) and that Petitioner in fact "wants" the Bitcoin transaction to be consummated.  Hearing Tr. at 10:5-8. ("MR. ETRA: A lot has happened, and perhaps we are unfortunate in concentrating on dealing directly with their client and directly with what the client in fact wants to accomplish.")  It is on this incredible basis that Etra withheld $400,000 of Petitioner's money for nearly a month after Petitioner had unambiguously terminated the escrow agreement with Etra and demanded its money back.  *See* Petition at ¶ 50.  When Mr. Etra was prompted by the Court to produce recent communications from Petitioner reflecting its purported desire for him to continue holding the money, after falsely representing that such communications were readily available, Mr Etra was able to produce only two communications dated as of August 2018.  *See* Hearing Tr. at 11:24-13:21.

Based on Mr. Etra's conduct, monetary sanctions are appropriate and should be awarded. This Court possesses the inherent authority to punish, by the assessment of fines, the "[m]isbehavior of any person in its presence or so near thereto as to obstruct the administration of justice."  18 U.S.C. § 401.  *See also Macolor v. Libiran*, 2015 US Dist LEXIS 34010 (S.D.N.Y. Mar. 18, 2015) (Furman, J.) (awarding monetary sanctions for the making of false statements to the Court, under the Court's inherent authority and Rules 11 and 16 of the Federal Rules of Civil Procedure).

Based on Mr. Etra's status as a New York attorney and an officer of the Court, his conduct is even more egregious and should not be tolerated by the Court.  *See United States v. Daugerdas*, 867 F. Supp.2d 445, 448 (S.D.N.Y. 2012) (Pauley, J.) ("[A]ttorneys, as officers of the court, owe an unflagging duty of candor to the tribunal. When these foundational duties are breached, the integrity of the judicial process is undermined and a free society imperiled.")

## CONCLUSION

For the reasons set forth above and in the accompanying Declaration and exhibits, the Court should find Etra in contempt of Court and order that Etra be incarcerated and/or fined until such time as he has fully complied with the orders of the Court by:

(i) producing "copies of all communications between and among any of [himself], Valkyrie Group LLC, Valhalla Venture Group LLC, Brandon Austin, Hugh Austin, Tracy Evans, 'Dmitri,' and Ming Hoang Le, or any of their affiliates, representatives and/or agents, concerning the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Benthos into [his] IOLA account" (Dkt. 4 at ¶ 4(a)); and

(ii) certifying under penalty of perjury that all such communications have been produced; and

(iii) submitting to a deposition under the auspices of the Court.

Additionally, sanctions should be assessed against Etra for his repeated misrepresentations to the Court during the Hearing on November 15, 2018.

Finally, pursuant to Local Civil Rule 83.6 and other applicable authority, Etra should be held liable for the damages occasioned by his contempt, including but not limited to Petitioner's reasonable attorneys' fees expended in the bringing of this Motion.

Dated: November 20, 2018

**KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.**

By: _____
Steven R. Popofsky
Joshua K. Bromberg

551 Fifth Avenue, 18th Floor
New York, New York 10176
Telephone:  (212) 986-6000
Facsimile:  (212) 986-8866

Attorneys for Petitioner
**BENTHOS MASTER FUND, LTD.**

9