UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                                :

BENTHOS MASTER FUND, LTD.,          :
                                             :     Case No. 18-cv-9401 (DAB)
                             Petitioner,  :
                                             :

                   - against –        :
                                           :

AARON ETRA                         :
And JANE DOE, A/K/A "TRACY EVANS"  :
                                           :
                          Respondents.  :
                                           :
-------------------------------------------------------------x

## DECLARATION OF DAVID S. HAMMER SUBMITTED
## <u>IN OPPOSITION TO PETITIONER'S MOTION FOR CONTEMPT</u>

     David S. Hammer, with knowledge of the penalty for perjury under the laws of the United States of America, declares the following:

     1.      I am an attorney licensed to practice in the State of New York, and a member of the bar of this Court.  In the present action, I represent respondent Aaron Etra (variously, "Respondent" and "Etra").  I am familiar with the facts of the case as those facts are set out in: (i) the documents filed with this Court and available on Pacer, (ii) the documents provided to me by my client during the course of my representation, and (iii) interviews with my client conducted over the last several days.

     2.      I submit this declaration in opposition to the <u>Motion to Hold Respondent Aaron Etra in Civil Contempt and Award Sanctions</u> (the "Motion") filed by Petitioner Benthos Master Fund, Ltd. (variously, "Petitioner" and "Benthos").   As its title suggests, the Motion has two

1

parts: (1) a demand that Etra be held in civil contempt for "flout[ing] the clear and unequivocal orders of the Court", and (2) a demand that non-contempt sanctions be imposed as punishment for Etra's "willful misrepresentations" at a hearing on November 15, 2018 (the "November 15th Hearing").

3.      Both aspects of the Motion are without merit.  In the first regard, as of the date of this declaration (November 26, 2018) Etra has complied with all outstanding orders issued by this Court; this includes the Court's order of October 19, 2018 (the "October 19th Order"), directing Etra to provide the documents and information requested by Benthos's petition for an order to show cause, and the directives the Court issued from the bench at the November 15th Hearing. Having complied with the Court's orders, there is no basis for holding Etra in civil contempt.[1]

4.      Petitioner's second demand, for non-contempt sanctions, is genuinely frivolous. Benthos has not identified any misrepresentations, willful or otherwise, in Etra's comments or submissions at the November 15th Hearing.

**Etra Has Complied With the Orders of This Court**

5.      A brief procedural history of this matter, as it pertains to the present Motion, may prove helpful.  On October 15, 2018, Benthos filed an order to show cause asking, inter alia, for the Court to: (i) freeze any portion of the $5 million that Benthos had deposited in Mr. Etra's IOLA account to be used for the purchase of bitcoins and (ii) order Etra to provide certain documents and information that Benthos asserted were essential to tracing and recovering $4.6

---

[1]      The October 19th Order is document 8 in the Documents section of the Pacer website's entry for this case.

2

million that Mr. Etra had released from his IOLA account in an attempt to purchase such bitcoins for Benthos.

6.      On October 19, 2018, this Court issued an order (previously identified as the "October 19th Order") which: (i) restrained any use of the funds in Etra's IOLA account, (ii) directed Etra to provide the documents and information demanded in Benthos's Petition for an Order to Show Cause, and (iii) set down a hearing for November 15, 2018.

7.      On November 15, 2018, this Court conducted the hearing scheduled by the October 19th Order.  At this hearing, counsel for Benthos accused Etra of willful non-compliance with the October 19th Order, in particular, with not providing the information necessary for Benthos to trace and possibly recover the money Etra had released from his IOLA account as part of the "Bitcoin Transaction".  At the end of the Hearing, the Court warned Etra that he must immediately comply with the directives in the October 19th Order or face civil contempt.  The Court also urged Etra to refund the $400,000 remaining in his IOLA account from Benthos's original deposit, stating that "If . . . you feel that you can give the money back, that would be a big help and perhaps get you out of civil contempt but there are other bits of information that you must supply as well." Declaration of Joshua Kalllman Bromberg in Support of Motion For Contempt, dated November 20, 2018, exh. A (hereafter, "Bromberg Declaration").

8.      The Hearing convened at 3:05 in the afternoon of Thursday, November 15, 2018, and lasted approximately half an hour.  See, Bromberg Declaration, exh. A, cover page. Immediately after it ended, Etra started bringing himself in full compliance with the Court's directives.  His first act, initiated a few hours after the Hearing, was to transfer the $400,000

3

remaining in his IOLA account to Petitioner's counsel, a point acknowledged in Petitioner's Motion papers.  Bromberg Declaration ¶ 13.

9.      Etra's efforts continued over the next several days; during this period he sent counsel various written statements and documents called for by the October 19th Order.  By November 20, 2018, when Benthos filed its Motion for contempt, there was only one directive that Petitioner claimed was unfulfilled: this was Benthos's demand for communications by and among Etra and the other participants in the Bitcoin Transaction, to the extent those communications concerned the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Benthos into Etra's IOLA account. Petitioner's Memorandum of Law at 7.[2]

10.     We note, and Benthos appears to concede, that Etra had produced *some* materials called for by this demand (the "Email Demand) even before the Motion was filed.  Bromberg Declaration ¶ 14.  In any event, as of the date of my own declaration (November 26, 2018), Etra has produced *all* the documents called for by the Email Demand.  As described below, this morning I personally delivered to Petitioner's counsel nearly 400 pages of emails by and among the participants to the Bitcoin Transaction.

---

[2]      The actual language of the demand was for:

'copies of all communications between and among any of [yourself], Valkyrie Group LLC, Valhalla Venture Group LLC, Brandon Austin, Hugh Austin, Tracy Evans, 'Dmitri,' and Ming Hoang Le, or any of their affiliates, representatives and/or agents, concerning the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Benthos into [your] IOLA account[.]'

Petitioner's Memorandum of Law at 7.

Production of the Bitcoin Communications

11.     Aaron Etra retained my services on Friday, November 23, 2018.  On being retained, I directed Etra to provide me with all the communications in his possession that fell within the terms of this Court's October 19th Order.  Mr. Etra agreed to deliver them to my home over the weekend.

12.     After meeting with Etra, I emailed Petitioner's counsel (Messrs. Popofsky and Bromberg) stating that I intended to turn over all emails that were called for in the Court's order by the afternoon of Monday November 26th.  I asked counsel to withdraw their Motion, observing that "at this point . . . [it] has achieved its aim".  Neither Mr. Popofsky nor Mr. Bromberg immediately responded to this email, presumably because both men were out of the office for Thanksgiving.

13.     The day following my meeting with Mr. Etra, he delivered nearly 400 pages of printed emails and attachments to my apartment, stating that this was the entire corpus of documents called for by the October 19th Order.  I spent the rest of the weekend reading through these materials.  This morning (Monday, November 26, 2018), I copied and delivered the emails to Petitioner's counsel.  With the production of these documents, Mr. Etra came into full compliance with the October 19th Order.  In short, there are no present grounds on which Mr. Etra can be found in civil contempt.[3]

---

[3]     In fact, Mr. Etra has gone further than the October 19th Order requires: he has returned to Benthos all funds remaining from Petitioner's original deposit of $5 million.  This was an action that Your Honor recommended at the November 15th Hearing, but did not actually direct.

**Petitioner's Demand For Non-Contempt Sanctions**

15.     In addition to seeking a citation for civil contempt, the Motion demands that Your Honor "punish" Mr. Etra for his alleged misbehavior during the November 15th Hearing. Petitioner's Memorandum of Law at 8, citing 18 U.S.C. § 401.  This misbehavior purportedly was of two types.  First, according to Petitioner, Etra misled the Court by: (i) stating or implying that he was represented by Michael Hess, and (ii) falsely stating that Mr. Hess was too ill to attend the Hearing.  Second, according to Petitioner, Mr. Etra tried to "excuse his noncompliance with the Court's orders by asserting that he has remained in contact with Petitioner (notwithstanding that he is an attorney and Petitioner is represented by counsel) and that Petitioner in fact 'wants' the Bitcoin transaction to be consummated." Petitioner's Memorandum of Law 7-8.

16.     This portion of the Motion may fairly be characterized as frivolous.  Thus, Benthos asserts that Etra attempted to secure an adjournment by handing up an email from Michael Hess that: (i) falsely stated or implied that Hess was Etra's lawyer, and (ii) falsely stated that Mr. Hess was too sick to attend the November 15th Hearing.  Benthos, however, has not presented the "Hess Email" as an exhibit; the only evidence of its contents is a brief description in the Bromberg Declaration:

> 10.     In the courtroom prior to the Hearing on November 15, 2018, Mr. Etra handed to the Court's deputy clerk an email purporting to be from Michael Hess, in which Mr. Hess claimed to be severely ill and requested an adjournment of the Hearing.  I was shown the email briefly by Mr. Etra but was not provided with the copy.

Bromberg Declaration ¶10.

17.     Petitioner's decision to rest its demand for sanctions on this passage is, to put it mildly, very strange.  For the passage does not include an assertion that the Hess Email represented Hess to be Etra's attorney.  In other words, Petitioner's own attorney does not recall the representation on which Benthos bases its demand for sanctions. And since Petitioner adduces no other evidence on point, this portion of the Motion must fail.

18.     Petitioner asserts that there was another misrepresentation in the email handed up at the November 15th Hearing: the statement that Mr. Hess as too ill to attend.  The evidence that this representation was false, however, is almost comically weak.  According to Mr. Bromberg, he had a telephone conversation with Mr. Hess the day before the hearing, during which Hess said nothing to indicate that he was sick. Bromberg Declaration ¶ 21; Petitioner's Memorandum of Law at 7.  This is the only evidence Benthos presents that Hess was not sick, the only evidence that the Hess Email lied in stating that Hess was ill.

19.     This argument is ridiculous.  But even if it were valid, it would not justify Petitioner's request for sanctions.  To justify sanctions against *Etra*, it is not enough to show that Hess was lying when he wrote in his email that he was sick: Petitioner also must show that Etra knew Hess was lying.  After all, Benthos asks the Court to punish Etra, not Hess.  Yet Benthos has presented no evidence that Etra knew the true state of Hess's health.  This is a fatal deficiency.

20.     As it happens, the Hess Email almost certainly was truthful.  On Sunday November 25, 2018, in the course of preparing this declaration, I spoke to Mr. Hess by phone, having obtained his number from Mr. Etra.  During this conversation, Mr. Hess told me that,

7

shortly before the November 15th Hearing, he had in fact provided Mr. Etra with an email which:
(i) stated that he (Hess) was too sick to attend the Hearing, and (ii) asked the Court for an
adjournment to a date on which he could attend.  Mr. Hess added that he has in fact been ill for
several weeks with an ailment his doctors have been unable to diagnose, and that his pain is so
severe that he has been house-bound, unable to go to work.  In short, the representations in the
Hess Email were true.

21.     Petitioner's demand for sanctions does not rest entirely on the Hess Email.
According to Petitioner, sanctions also should be imposed because Etra continued to
communicate with Benthos after this litigation commenced, and had the temerity to argue that
these communications demonstrate his good faith.  Thus, we are told,

> Mr. Etra should be sanctioned for his attempt to mislead the Court and excuse his
> noncompliance with the Court's orders by asserting that he has remained in
> contact with Petitioner (notwithstanding that he is an attorney and Petitioner is
> represented by counsel) and that Petitioner in fact "wants" the Bitcoin transaction
> to be consummated.

Memorandum of Law at 8.

22.   This argument is very difficult to parse.  The first contention is that Etra should not
have communicated with Benthos after Benthos retained counsel.  But even if this proposition is
correct – a point we by no means concede – such communication did not take place in the
Court's presence, and thus did not constitute a form of misconduct that may be sanctioned under
28 U.S.C. § 401.

23.     Moreover, it is far from clear that Etra's communications with Benthos were
improper.  Under Rule 4.2 (c) of New York's Rules of Professional Responsibility, an attorney

representing himself pro se *may* communicate with a represented party if: (i) that party is competent, and (ii) that party's counsel is on reasonable notice that the communications are taking place.  In the first regard, Mr. Bromberg does not suggest that his client is less than competent.  In the second, since Etra disclosed the communications to the Court – indeed emphasized them, as evidence of his good faith -- Petitioner's counsel must have known they were taking place.  We note  in this regard that, until they filed the Motion, counsel for Petitioner never objected to these communications, or notified Etra that they should cease.

24.     Petitioner makes a final and very strange argument for the imposition of sanctions.  Even after the present action commenced, Etra allegedly told Benthos that he was still trying to consummate the Bitcoin Transaction, and then argued to the Court that his persistence in this attempt was evidence of his good faith.  This argument, according to Petitioner, was improper, indeed sanctionable.  But why was it improper?  After all, Petitioner's counsel has repeatedly suggested that the Bitcoin Transaction was a simple fraud, and that Mr. Etra was at best "a sap who was used by some fraudsters", and at worst, a fraudster himself. See, exh. A to the Bromberg Declaration (Transcript of November 15, 2018 Hearing) at 17.  Given these accusations, Etra naturally would be eager to demonstrate that he is *not* a fraudster intent on stealing Benthos's money, but a legitimate escrow agent who even now is trying to help Petitioner obtain the Bitcoins it contracted to buy.

## CONCLUSION

25.     As of the date of this declaration, Mr. Etra has fully complied with the requirements of this Court's October 19th Order.  Indeed, he has gone beyond those requirements, having returned $400,000 from his IOLA account, a matter that was not included

9

in the October 19th Order or, for that matter, in the directives issued by the Court at the November 15th Hearing.  There are no remaining grounds on which to issue a contempt citation. Nor are there any grounds to impose a non-contempt sanction under the authority of 18 U.S.C. § 401.  Petitioner has not remotely shown that Etra made any misrepresentations to the Court at the November 15, 2018 Hearing, or acted improperly in attempting to consummate the Bitcoin transaction after Petitioner commenced this litigation.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Date:   November 26, 2018
        New York, New York 10110


*David S. Hammer*
_____
David S. Hammer (DH 9957
500 Fifth Avenue, 34th Floor
New York, New York 10110
(212) 941-8118

Attorney for Respondent Aaron Etra