

*Direct Dial: 212.880.9882*
*E-Mail: spopofsky@kkwc.com*

November 27, 2018

**BY ECF and E-Mail**

Hon. Deborah A. Batts
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 24B
New York, NY 10007

**Re: Benthos v. Etra and Evans, Case No. 18-cv-9401 (DAB)**

Dear Judge Batts:

I write on behalf of petitioner to point out the procedural and (grievous) substantive deficiences in respondent Etra's opposition to the motion for contempt. Preliminarily, petitioner violates Local Civil Rule 7.1(a)(2) by failing to include a memorandum of law.[1] Furthermore, Etra's new counsel, retained four days ago, admits that he did no search himself for responsive documents (Hammer Decl. paras. 11-13), but merely took his client at face value that Etra has provided "the entire corpus of documents called for by the October 19th Order." That statement is not credible, for at least the following reasons:

- No affidavit is provided by Etra swearing that he has produced all the ordered correspondence. The Notice of Motion sought such a certification under penalty of perjury, and the opposition does not address that at all, but when we asked his counsel for such a certification yesterday we were rebuffed. The statement by his counsel that "Etra has complied with all outstanding orders issued by this Court . . . [and therefore] there is no basis for holding Etra in civil contempt" (Hammer Decl. para. 3; see also id. at paras. 13 and 25) has zero legal value, as counsel admittedly has no personal knowledge whatsoever.

- Of the e-mails produced, almost none post-date Etra and his co-conspirators being served with Judge Castel's Order on October 15, 2018. During that six-week period, respondents were continuing (albeit non-credibly) to assure petitioner and

[1] That failure, "standing alone, is sufficient cause for granting or denying a motion. It is not necessary to reach the merits." *Cea v. Access 23 TV*, No. 11-CV-3791 (NSR), 2015 WL 5474070, at *1 (S.D.N.Y. Sept. 15, 2015) (citing *Avillan v. Donahoe*, No. 13 Cv. 509 (PAE), 2015 WL 728169, at *6 (S.D.N.Y. Feb. 19, 2015)). "Neither an affidavit nor an affirmation will satisfy Rule 7.1's memorandum requirement." *Id.* (citing *Burroughs v. Chase Manhattan Bank, N.A.*, No. 01 Cv. 1929 (BSJ), 2004 WL 350728, at *2 (S.D.N.Y. Feb. 25, 2004); *Versace v. Versace*, No. 01 Cv. 9645 (PKL)(THK), 2003 WL 22023946, at *5 (S.D.N.Y. Aug. 27, 2003); *Greenstreet Fin., L.P. v. CS-Graces*, LLC, No. 07 Cv. 8005 (KNF), 2011 WL 7555324, at *4 (S.D.N.Y. Apr. 18, 2011)).



its counsel that, for example, Etra was "still working" on "consummating the transaction"; that things were "moving" and Etra had located "three buyers" to consummate the transaction; and that "[t]here has been a lot of positive activity during the past weeks that is finally happening. . . . If we can deliver the [bitcoin] . . . would that work for you to complete the transaction?" But no correspondence has been produced between or among the co-conspirators evidencing that supposed "positive activity," nor in any way addressing what was going on with this court proceeding – which surely was a topic of discussion among Etra and his confederates – except for one solitary e-mail, dated Thanksgiving Day, from "Minh Hoang Le" (custodian of the supposed "storage facility"), telling respondent Evans:

> Good to see your update. It was so sad to know what you and Aaron are going through at this moment with the Lawyers and the Court. . . .

But the e-mail to which that was responding said nothing at all about "what [respondents] are going through . . . with the Lawyers and the Court." All such correspondence has been withheld by Etra, still.

The only other post-October 15 e-mail between the co-conspirators that Etra appears to have produced similarly raises many more questions than it answers, and further indicates that important correspondence is being withheld by Etra. In that e-mail dated October 25, 2018, Brandon Austin (principal of petitioner's contracting counter-party) purported to request Etra to "immediately start the process of unwinding the transaction" and purported to ask Etra several questions, including "How long will it take to return the funds from the storage facility/facilitator?" and "Pending the wire transfer from the storage facility/facilitator of the funds, if for some reason [it] cannot be done immediately, can you request that they provide a bank statement confirming their possession of the funds[?]" Etra has not produced any response from him to that e-mail, and, of course, he did nothing to "unwind the transaction" and has never obtained, or evidently even sought, "a bank statement [from the storage facility] confirming their possession of the funds."

<u>Only a deposition of Etra will be able to clear all this up</u>. If in fact, as his counsel claims, "Etra naturally [is] eager to demonstrate that he is *not* a fraudster intent on stealing Benthos's money, but a legitimate escrow agent who even now is trying to help Petitioner obtain the Bitcoins it contracted to buy" (Hammer Decl. para. 24), one would expect him to readily consent to provide testimony under oath. Indeed, the Notice of Motion requested this relief and Etra's opposition did not

address it, thereby conceding its appropriateness, but nonetheless the Court should issue an order to avoid any subsequent evasion by Etra.

- Etra's new lawyer produced only photocopies of printouts of e-mails.[2] This is palpably insufficient under the circumstances, as the absence of an electronic production with metadata makes it impossible to verify when the documents were created and edited and by whom, and whether anything has been omitted, altered or redacted (and there is a history in this case of Etra and his co-conspirators forwarding e-mails to petitioner with identifying information redacted).

  An electronic production, and a forensic examination of Etra's computer (and the aforementioned deposition), are warranted and required in order to clarify whether the Court's two orders, on October 19 and November 15, have belatedly been complied with, as they appear not to have been complied with as addressed above.

- In court on November 15, Etra sought permission to withhold "information that is privileged or private" (Tr. 23). It is entirely unclear whether he is continuing to do so.

- It cannot be stressed enough that Etra has a demonstrated history of untrustworthiness and dishonesty, and his purported representations to his new lawyer cannot be taken at face value. A lawyer and fiduciary, he ignored – utterly refused to respond to – requests from petitioner's counsel on August 31 and September 28 for information and documents about the whereabouts of funds entrusted to and disbursed from his IOLA account; he ignored (completely) this Court's Order of October 19 (the validity of which his lawyer concedes); he refused to return to petitioner the $400,000 he was holding, notwithstanding the express "termination" of the transaction on October 12 and the express request for return of the funds, until ordered to do so by the Court on November 15 upon penalty of jail (and he presumably pocketed the interest earned on that $400,000)[3]; and he repeatedly assured petitioner that consummation of the

---

[2] "[N]early 400 pages of e-mails" is disingenuous and misleading in any event. There were 354 loose sheets of paper, approximately 100 of which were totally duplicative, and as noted above the vast majority of e-mails included petitioner and were from last August, before the problems arose, and before Etra was asked for documents and information on August 31 and embarked on ten weeks of obstructionism – including ignoring multiple requests and the Court's October 19 Order – that ended, although only in part, only after Benthos spent tens of thousands of dollars and the Court threatened to put Etra in jail ("pack your toothbrush").

[3] Etra's counsel somehow maintains that return of the $400,000 "was an action that Your Honor recommended at the November 15th Hearing, but did not actually direct" (Hammer Decl. p. 5 n.3; see also id. para. 25). To the contrary, see page 24 of the hearing transcript: "THE COURT: Listen to me: Return the $400,000 to the plaintiff immediately."



underlying Bitcoin transaction was imminent when clearly it was not. As late as November 19, the individual Etra identified as his then-lawyer was continuing to tell petitioner's lawyers that (according to Etra) no additional documents existed that were responsive to the Court's orders. And then, in open court on November 15, Etra made several false statements to the Court:

- He stated "that is totally incorrect" (Tr. 11) in response to the allegation that "Mr. Etra has given nothing. He is an escrow agent, he has given nothing at any time since August 31st. . . ." Of course the allegation was 100% correct, as the Court is well aware from the record.

- He stated that "[Mr. Popofsky's] client [i.e., petitioner Benthos] has been wanting us to do what we have [done]" – i.e., continue with the underlying transaction, meaning he was alleging that the undersigned counsel was proceeding in contravention of the client Benthos's wishes (Tr. 11). When asked by Your Honor, "What proof do you have that his client wants you to do this?" (id.), he replied, "Response from his client, we have correspondence which we are happy to submit. . . . Your Honor, here is a correspondence from me to his client and the confirmation from his client . . ." (Tr. 12). That e-mail was dated August 17, 2018! (Tr. 13) Etra then stated, "I have subsequent correspondence right up through the middle of October, your Honor . . . [w]hich was sent to their client and response from their client" (id.) – and that similarly was dated August 25, 2018 (id.).

- He walked into the court hearing on November 15 and stated, "My counsel [Mr. Hess] was planning to come to the hearing but as of yesterday he was completely laid low and has been unable to even communicate except via e-mail" (Tr. 2), notwithstanding that that very individual had called petitioner's counsel at approximately 4:00 PM that prior day and stated that "he is only a friend of Mr. Etra's, he . . . will not make an appearance for Mr. Etra, he does not represent Mr. Etra" – and most importantly he did not claim any illness and (quite obviously) was not at all "unable to even communicate except via e-mail."[4]

[4] It is the foregoing misrepresentations that form the basis for petitioner's sanctions request (Point II in the moving memorandum of law). Etra's counsel's discussion of this at pages 6-9 of his declaration totally fails to grapple with, much less refute, any or all of those misrepresentations. The heart of this motion, however, is to obtain information in aid of arbitration to purge Etra's admitted prior contempt, and to obtain compensation for the substantial costs imposed upon Benthos by that contempt.

KLEINBERG KAPLAN

- Finally, Etra's counsel admitted, in making his client's incomplete production yesterday, that he is continuing to withhold documents: "Mr. Etra withheld . . . emails concerning the attempt to locate a supplementary buyer, that is, someone who would invest the extra $850,000 the seller's representative was demanding. I agreed with him that these emails fall outside the scope of the Court's order, and cannot provide you with any leads in your attempt to trace and/or recover any funds already released." That rationale is nonsensical – documents concerning the purported attempt to find a supposed "supplementary buyer" self-evidently "concern[] the Bitcoin Agreement, the Escrow Agreement, and/or the funds deposited by Benthos into Etra's IOLA account" as that purported exercise has been the very reason stated by Etra and the others for the failure to comply with the referenced Agreements. Thus even on Etra's own terms he has not complied fully with the Court's Orders.

This is a petition in aid of arbitration. Etra and his confederates took $5 million of Benthos's money; promised to supply Bitcoin in exchange for that money; supplied no Bitcoin; have refused to return $4.6 million of the money (the other $400,000 having belatedly been returned, as noted, only after extreme threats from the Court); and have proffered for months now an unending cascade of excuses and stories that make no sense, are internally incoherent and in any event have proven false. Etra, a New York lawyer, a fiduciary and an Escrow Agent, continues to hide something or protect someone (or both), and steadfastly refused for ten weeks, notwithstanding multiple requests and a court order, to provide documents and information about his disbursement of the escrowed funds entrusted to him. Then he lied about all that to the Court.

Now he retains a new lawyer, on Friday, and dumps a few printouts of some e-mails on the lawyer on Saturday and tells the lawyer "that's everything." That is simply not credible in light of the record. Accordingly, petitioner respectfully requests a Court order that Etra be held in civil contempt of Court unless he does the following:

First, provide electronically (with metadata) all the e-mails and documents he has previously produced, plus the ones his lawyer stated have been withheld relating to the supposed "supplementary buyer," within three days of the Court's order;

Second, make his computer(s) and phone(s) available for forensic examination, by an expert to be chosen jointly by Etra's counsel and the undersigned, at Etra's expense, within ten days of the Court's order;

Third, submit to a deposition on all of the issues raised by the petition and this motion within fourteen days of the Court's order; and



Fourth, compensate Benthos – in accordance with the authorities cited on page 7 of the moving memorandum of law, including Local Civil Rule 83.6 – for the costs it has incurred, including reasonable attorneys' fees, seeking to obtain Etra's compliance with his fiduciary obligations as Escrow Agent since August 31, 2018 and seeking to obtain his compliance with the Court's Order of October 19, 2018. Benthos has spent tens and tens of thousands of dollars seeking what Etra should have provided three months ago, and he should be responsible for those costs, upon the following procedure: Petitioner's counsel shall provide Etra's counsel with proof of its costs within five days of the Court's order; Etra or his counsel shall respond to petitioner's counsel within five days thereafter; and if the parties cannot reach agreement on the appropriate sum within three days thereafter, petitioner's counsel shall make application to the Court for an appropriate award, which shall be paid within five days of any agreement or order of the Court.

On behalf of petitioner Benthos, which has been the victim of both a fraud and a crime perpetrated by, and/or with the knowing assistance of, respondent Etra, we thank the Court for its attention to this matter, and for obtaining thus far at least the return of $400,000 of Benthos's money. Recent events will have made clear to the Court that nothing but its strongest intervention will affect Etra's behavior. It should also be clear that continued intervention is necessary.

Respectfully yours,

Steven R. Popofsky

cc: David Hammer (by ecf and e-mail)