IBF5benO

1  UNITED STATES DISTRICT COURT
   SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x

3  BENTHOS MASTER FUND, LTD.,

4                  Plaintiff,              New York, N.Y.

5          v.                              18 Civ. 9401 (DAB)

6  AARON ETRA, and
   JANE DOE, a/k/a "TRACY EVANS,"

7

8                  Defendants.

9  ------------------------------x

10                                         November 15, 2018
                                           3:05 p.m.
11
   Before:
12
                       HON. DEBORAH A. BATTS,
13
                                           District Judge
14

15                       APPEARANCES

16

17 KLEINBERG, KAPLAN, WOLFF & COHEN, P.C.
        Attorneys for Plaintiff
18 BY:  JOSHUA K. BROMBERG
   BY:   STEVEN R. POPOFSKY
19
   AARON ETRA, Pro Se
20
   TRACY EVANS, Pro Se
21

22

23

24

25

                    SOUTHERN DISTRICT REPORTERS, P.C.
                           (212) 805-0300

IBF5benO                          Order To Show Cause

 1              (Case called)

 2              THE DEPUTY CLERK:  Counsel, please state your name for

 3     the record, starting with plaintiff's counsel.

 4              MR. BROMBERG:  Joshua K. Bromberg of Kleinberg,

 5     Kaplan, Wolff & Cohen.

 6              MR. POPOFSKY:  Steven Popofsky; same firm, your Honor.

 7              THE COURT:  Good afternoon, gentlemen.

 8              And I see that the defendants are sitting here without

 9     attorneys.  Why is that?

10              MR. ETRA:  Your Honor, my counsel was planning to

11     come.  My counsel was planning to come to the hearing but as of

12     yesterday he was completely laid low and has been unable to

13     even communicate except via e-mail and asks your Honor for an

14     adjournment for several days to be able to --

15              THE COURT:  No.  No.  This is unbelievable.

16              You may or may not be aware of the fact that the

17     Court -- this Court -- on October 19th, set an order out.  The

18     defendants seek an adjournment from October 25th in order to

19     obtain counsel.  Plaintiffs wisely opposed.  I extended the TRO

20     until today at 2:30.  *Defendant shall obtain counsel, prepare*

21     *to proceed on November 15th, 2018, or the case shall proceed*

22     *with defendants pro se.  Defendants shall submit all*

23     *information ordered in the TRO on or before Friday, October 26,*

24     *2018 at 5:00 p.m.  The temporary restraining order restraining*

25     *defendants from removing or transferring any additional funds*

IBF5benO                        Order To Show Cause

1   *remains in full force, in full effect, until November 15th,*

2   *2018 at 2:30.*

3           Did you turn over the materials that were requested

4   initially by Judge Castel and then by me?

5           MR. ETRA:  Your Honor --

6           THE COURT:  That's a yes or a no.

7           MR. ETRA:  I gave counsel all the material involved,

8   yes.

9           THE COURT:  To the plaintiffs?

10          MR. ETRA:  To my counsel.

11          MR. BROMBERG:  Nothing was provided to us, your Honor.

12          And may I be heard briefly on Mr. Etra's

13  representation that he has retained counsel?  Because the

14  person that he seems to be holding out as his counsel, your

15  Honor is a Michael Hess. I spoke to Mr. Hess yesterday.  He

16  called me at approximately 4:00 p.m. and he stated to me that

17  he is a friend of Mr. Etra's, that he has known him for a long

18  time.  I had spoken to Mr. Hess previously and he told me the

19  same thing, emphatically, that he does not represent Mr. Etra,

20  he is only a friend of Mr. Etra's, he is trying to reach out on

21  behalf of Mr. Etra to play peacemaker.  He said he will not

22  make an appearance for Mr. Etra, he does not represent

23  Mr. Etra.

24          MR. POPOFSKY:  Your Honor, can I add one thing to

25  that?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1    THE COURT:  You can add as much as you want.

2    MR. POPOFSKY:  Mr. Etra just stated in court to your

3    Honor that his purported counsel was laid low yesterday and

4    unable to communicate except by e-mail.  Your Honor should pay

5    careful attention to that because at 4:15 p.m. yesterday,

6    Mr. Hess was on the phone with Mr. Bromberg, my co-counsel, and

7    number one, he was communicating perfectly fine; and number

8    two, he didn't say a word to Mr. Bromberg about being ill.

9    So assuming that Mr. Hess, a lawyer is an honest

10   person, the only conclusion is that Mr. Etra has made a

11   misrepresentation which would not be the first one, your Honor.

12   MR. ETRA:  Your Honor, may I comment on that?

13   All of the facts involved are clear and not the

14   conclusion, however.  Mr. Hess is representing me.

15   THE COURT:  Wait.  If he is representing you, has he

16   filed a notice of appearance?  Yes or no?

17   MR. ETRA:  I don't know.  I guess that's a question to

18   him.

19   MR. POPOFSKY:  We have received no notice of

20   appearance, nor opposition papers.

21   THE COURT:  All right.

22   Ms. Evans, why do you not have an attorney here?

23   MS. EVANS:  I just thought that I would do a letter.

24   THE COURT:  Do a letter?  This is an emergency

25   proceeding.  It is not just even a regular lawsuit.

1        MS. EVANS:  Oh.

2        THE COURT:  You thought you would do a letter?  And

3   when were you going to do a letter?

4        MS. EVANS:  No, a motion letter.

5        I called the pro se office and they said that was the

6   format, and I did one and I filed it today and I brought a copy

7   to the Court because it was that --

8        THE COURT:  Has opposing counsel seen it?

9        MS. EVANS:  What?

10       THE COURT:  Has opposing counsel seen it?

11       MS. EVANS:  Yes, they have.

12       MR. BROMBERG:  It was shown to us briefly about 15

13   minutes ago, your Honor, and it contains largely the same

14   excuses that the petitioner has been hearing from Ms. Evans for

15   the last three months.

16       THE COURT:  First of all, it seems to me that the

17   defendants have given the Court no reason -- no reason -- to

18   expect that they're going to obey Court orders.  Everything

19   that has been ordered by either Judge Castel or by me you have

20   ignored.

21       So, let me just make this very quick.  It is clear

22   that based on the facts set forth --

23       MR. ETRA:  Your Honor?

24       MS. EVANS:  Your Honor?

25       MR. ETRA:  Could I possibly make a statement of

1     explanation?

2              THE COURT:  No.

3              Do you not understand the dates that I told you by

4     which to do things?  I have heard nothing from you.  I have

5     seen nothing from you.  You show up today and you are ignoring

6     the orders of two Judges?  I don't understand why you think you

7     now have an opportunity for the first time to say something.

8              MR. ETRA:  Your Honor, may I make an explanation of

9     that?

10             THE COURT:  You have got one opportunity.

11             MR. ETRA:  The period that we are talking about,

12    Ms. Evans and I have been in direct contact with Benthos

13    Capital.  We have been working for the objective, the business

14    objective of this transaction which they continue to support

15    and wish, which is that the consummation of the underlying

16    transaction --

17             THE COURT:  No, I think they actually want their money

18    back because you haven't quite made it out to them, and to the

19    Court, that you are proceeding in good faith.

20             MR. ETRA:  Your Honor, I think we would be able to

21    prove to the contrary because, as recently as last week, their

22    client communicated to the party with whom they made the

23    agreement, the contract.  The contract was not with either

24    Ms. Evans or myself, but with the Valhalla Group that they do

25    want the consummation of the transaction and they do want us to

1    continue to do our work, and that's what we have been

2    diligently doing and focusing our energy on that.

3            MR. BROMBERG:  Your Honor, may I be heard?

4            THE COURT:  Of course.

5            MR. BROMBERG:  Mr. Etra received, on October 12th, a

6    termination of escrow stating, in explicit terms, that the

7    transaction was not consummated and that Benthos expected to

8    receive its money back and it is contractually entitled to

9    receive its money back.

10           MR. ETRA:  Your Honor --

11           MR. BROMBERG:  And, previous to that, your Honor,

12   Benthos asked for information as to where the $4.6 million that

13   was sent out of Mr. Etra's escrow account, had been sent.  We

14   received no response to the August 31st inquiry.  We received

15   no response to a second inquiry made at the end of September.

16   For the first thee months Mr. Etra has refused to tell our

17   clients where its five million dollars are.  Mr. Etra set a New

18   York attorney, he is an escrow agent, he has fiduciary and

19   ethical obligations.  It quite frankly shocks the conscience,

20   your Honor, that he has gotten away with it for this long.

21           MR. ETRA:  Your Honor, I think the facts will prove

22   that Ms. Evans and I have been in direct contact with his

23   client subsequent to that date on a continuing basis.  There

24   are facts involved that need to come out and if their client in

25   fact wants to proceed to arbitration, it will come out in

1    arbitration.  But, the misstatements of fact that have just

2    been made are easily --

3             THE COURT:  Well, let me see if I can make this clear.

4             Based on the performance of both Mr. Etra and

5    Ms. Evans, it seems to me that you are in contempt of Court.  I

6    would expect that the plaintiffs would make a motion for the

7    Court to find them in contempt of Court, at which point you

8    will be subject to being incarcerated, at which point you will

9    get out when you use the keys to the jail by doing exactly what

10   it is that two Courts have ordered you to do.

11            I don't want to hear anything else.  Flagrant ignoring

12   of Court orders are inappropriate, unacceptable, and will be

13   dealt with accordingly.

14            MS. EVANS:  Your Honor, if I could speak?

15            I did answer those questions that they asked in the

16   Order to Show Cause.  I have them.

17            THE COURT:  You have them?  You gave it to them?

18            MS. EVANS:  They're right here.

19            THE COURT:  No.  No.

20            MS. EVANS:  They're on paper.

21            THE COURT:  Answer my question.  Did you give it to

22   them?

23            MS. EVANS:  I brought them with me today.

24            THE COURT:  No.  No.

25            When were you supposed to do this?  I believe it was

1    by October 26th.

2              MS. EVANS:  I never -- your Honor, I don't know how

3    they served me but I never got anything by e-mail or anything

4    else.  I don't have Pesos -- PACER, or whatever it is.  I am

5    pro se, I called the Court.  I didn't find there was any order

6    other than the original one to answer the questions 2 through 4

7    and I did answer those.

8              MR. BROMBERG:  Your Honor, every filing that we have

9    made has been served upon Ms. Evans and we filed affidavits of

10   service to evidence that.

11             MR. POPOFSKY:  And she sent our clients -- yesterday

12   she sent our clients an e-mail.  She has been e-mailing our

13   clients for three months, as has Mr. Etra.  When she wants to

14   use e-mail, she knows how to use e-mail.  When your Honor

15   issues orders, we have been serving them on her by the same

16   e-mail that she uses.

17             MS. EVANS:  I didn't say e-mail, I said PACER or

18   however you find out that order.

19             But I have the questions that we were asked to answer

20   for today with me, all signed.

21             MR. ETRA:  And, your Honor --

22             MS. EVANS:  And these are the same for both of us.

23             MR. ETRA:  Their client has been regularly in contact

24   with us.  We have correspondence with them.  I deeply regret if

25   your Honor thinks that we have been looking to disobey and

1    dishonor the Court.

2            THE COURT:  I think that's the only thing I can

3    conclude based on what has happened since the day Judge Castel

4    signed the first order granting a TRO.

5            MR. ETRA:  A lot has happened, and perhaps we are

6    unfortunate in concentrating on dealing directly with their

7    client and directly with what the client in fact wants to

8    accomplish.

9            THE COURT:  Let me ask Mr. Bromberg and Mr. Popofsky

10   are, indeed, your clients continuing to have communication with

11   the defendants?

12           MR. BROMBERG:  No, your Honor.  And we have instructed

13   them not to.

14           MR. POPOFSKY:  Except to the extent that the

15   respondents continue e-mailing our clients on a regular basis

16   giving them the same false assurances that they have been

17   giving them for three months that, *The transaction is*

18   *imminently complete.  In a couple of days it will be done, in a*

19   *couple of days you will have everything.  Just, tell your*

20   *lawyers to calm down.  Everything will be fine.*

21           These have been repeated over and over and over for

22   three months.  Again, on August 31st, a formal letter was

23   written by counsel, to Mr. Etra, saying tell us where the money

24   is, where you have sent it, all communications that you have

25   dealt with concerning our client's escrow money.  This was by

1   our predecessor counsel. He ignored that letter.  30 days

2   later we sent another letter -- we sent -- asking the same

3   things, it is all in the papers your Honor has.  Very specific

4   questions:  *Where is the $5 million that you, a lawyer and*

5   *fiduciary and escrow agent, were entrusted with?  Where is it*

6   *now?  Where did you send it?  Who has it?  What do you know*

7   *about this transaction?*

8           He ignored that letter as well.  Then we went to

9   Court.  The Court orders were issued, as your Honor is aware.

10  He is ignored those as well.  Ms. Evans has now handed us a

11  piece of paper that seems to make some attempt, perhaps, to

12  answer the questions directed at her in the Order to Show

13  Cause.  Mr. Etra has given nothing.  He is an escrow agent, he

14  has given nothing at any time since August 31st.  He is a New

15  York lawyer with a law license.  It is incredible and beyond

16  belief.

17          MR. ETRA:  Your Honor, that is totally incorrect.  We

18  have correspondence to his client and from his client --

19          THE COURT:  He is represented.  Do you not understand

20  that?  Why are you dealing directly with the client when you

21  know he is being represented against you.

22          MR. ETRA:  Because his client has been wanting us to

23  do what we have --

24          THE COURT:  What proof do you have that his client

25  wants you to do this?

1          MR. ETRA:  Response from his client, we have

2    correspondence which we are happy to submit.

3          THE COURT:  Let me see it.

4          MR. ETRA:  Okay.  I would suggest you show it to

5    plaintiff's counsel first.

6          MS. EVANS:  And also, plaintiff's counsel, I can show

7    you something that might be important.  I don't know how to --

8    that's why I bought --

9          THE COURT:  Use the microphone.

10         MR. POPOFSKY:  Let me also say, your Honor, which I

11   think is obvious but is worth saying, this is not the lawsuit

12   or the arbitration against Mr. Etra, Ms. Evans, and others, for

13   breach of contract and fraud.  This is just the petition in aid

14   of arbitration.  All this petition seeks is information from an

15   escrow agent.  It doesn't seek to hold him liable for fraud.

16   That's next, but that's not this proceeding.

17         MS. EVANS:  Okay.

18         MR. ETRA:  Your Honor, here is a correspondence from

19   me to his client and the confirmation from his client.  I

20   confirmed the two transfers have been made to date from the --

21         THE COURT:  Just a second.  What are you reading?

22   Hand it over to plaintiff's counsel.

23         MR. ETRA:  Yes, ma'am.  Yes, your Honor.

24         THE COURT:  Let them look at it and then I will hear

25   from them as well.

1           MR. BROMBERG:  I have seen this before, your Honor.

2      This e-mail is dated August 17th, 2018.

3           THE COURT:  That's a little late, don't you think?

4      Since the first court order was in mid-October.

5           MR. BROMBERG:  I will just note, your Honor, this is

6      prior to the first request that our client made to Mr. Etra for

7      information as to where the money had been sent.

8           MR. POPOFSKY:  This is when the clients were working

9      with Mr. Etra believing that Mr. Etra was an honest person and

10     that he was effectuating their transaction.  Yes, they were

11     communicating.  Of course.

12          MR. ETRA:  I have subsequent correspondence right up

13     through the middle of October, your Honor.

14          THE COURT:  You have subsequent correspondence where

15     they sent to you?

16          MR. ETRA:  Which was sent to their client and response

17     from their client.

18          THE COURT:  Would you show that to plaintiff's

19     counsel?

20          MR. BROMBERG:  This is also dated August 25th, 2018,

21     your Honor.

22          MR. ETRA:  Part of a continuing series.

23          Your Honor, if it pleases the Court, and again in

24     respect of the arbitration, we would be happy to provide all

25     this data which the client has their own copies of.  So, we

1    truly have not --

2              THE COURT:  They don't have copies.  Their client does

3    not have copies of what you did with the money.  That's what

4    they want.

5              MR. ETRA:  And their client does and --

6              THE COURT:  Their client does?

7              MR. ETRA:  Yes.

8              THE COURT:  In other words you are representing to

9    this Court, as an officer of the court, that their client, the

10   plaintiff, knows where the money is?

11             MR. ETRA:  Yes, your Honor.

12             MR. POPOFSKY:  Where is it?

13             THE COURT:  Well, let's give you an opportunity to

14   tell the Court.  Where is the money?

15             MR. ETRA:  Yes.

16        The money, $400,000 remains in my escrow account.

17   $4,600,000 has been transferred to the transfer storage house

18   to facilitate the transaction in two transfers --

19             MR. BROMBERG:  Your Honor, we have --

20             THE COURT:  Finish up please, Mr. Etra.

21             MR. ETRA:  Yes.

22        Of the $5 million transferred, a total of $4,600,000

23   has been sent to the transfer storage house that was wired for

24   release of the Bitcoins.  $400,000 remains in my escrow

25   account.  That information has been known to their client.

1     THE COURT:  So, what's the problem?  Why haven't they

2  gotten the Bitcoin?

3     MR. ETRA:  The Bitcoins have needed to be -- a certain

4  amount of money need to be accumulated to release the Bitcoins.

5  Their client was unable to provide the full amount.

6     THE COURT:  What was the original contract for?  Did

7  it mention additional monies?

8     MR. ETRA:  It mentioned what was needed to release.

9  The process of the Bitcoin release of course changes with the

10  changing in values.  Their client has recognized that the

11  $5 million that they paid originally was insufficient to

12  release the full 1,000 Bitcoins which they know was the

13  minimum.  They said that we are able to come up with the full

14  amount themselves.  They said that they couldn't do any more

15  than the $5 million and so we were left to try to find others

16  to fill the difference in funds necessary to release the full

17  1,000.

18     THE COURT:  What paper trail do you have that proves

19  any of this?

20     MR. ETRA:  A full paper trail, your Honor.

21     MS. EVANS:  Full.

22     MR. POPOFSKY:  Your Honor, we have some misdirection

23  here, as usual.

24     There is truth to what he says in that there was a

25  contract signed and then the people who signed the contract

IBF5benO                              Order To Show Cause

1    began trying to renegotiate the contract, and they told our

2    clients here are 15 excuses where it is not happening and we

3    need more money.  Our clients, who were trying their best to

4    have the transaction happen so we wouldn't end up in this

5    situation today where they have spent tens of thousands of

6    dollars on lawyers and have no money and no Bitcoin and it is

7    almost Thanksgiving, our clients kept saying tell us what we

8    need to do, tell us what's happening.  They trusted Mr. Etra,

9    they tried to work with him, but they were at least smart

10   enough not to pay more than the $5 million that was already out

11   the door.

12        So, there is some truth to that but it's all

13   irrelevant.  This is a petition in aid of arbitration.  The

14   order to show cause lists a whole series of pieces of

15   information and documents that have been asked for.  He has not

16   provided those.  He just needs to be, I believe, respectfully,

17   ordered again today to provide, by tomorrow, in writing, every

18   single item of information requested in the Order to Show Cause

19   and every single document requested in the Order to Show Cause

20   because those documents will reflect who he dealt with, who

21   this mysterious transfer storage agent is, what is its address,

22   what is its location, what is its bank account number.

23        Once we have all of that information, that's the

24   purpose of a petition in aid of arbitration.  Then we will take

25   that and begin the appropriate arbitration.

I don't think he appreciates -- giving Mr. Etra the
benefit of the doubt, he is a sap who was used by some
fraudsters.  Let's assume he is not a fraudster himself for the
sake of discussion.  If that's the case, then he simply ought
to provide every document, every piece of information within
his knowledge or control, and then that will show that he is
just an innocent middleman.  But, he has been ordered to do
that already and I'm not sure he understands when your Honor
says we should make a motion to hold him in contempt, what he
hears is, oh, there will be a motion made next week, and then
the Judge will hear it in December and then we will deal with
it by then.

So, I believe, given the circumstances here and the
unrepresented clients, that your Honor should make a clear and
unequivocal order we will move for contempt but you should
please make a clear order to them to take the order to show
cause and provide written responses to each and every item and
to produce all documents requested within 24 hours, and that if
they do not do that they will be subject to contempt of court.

I believe Mr. Etra will understand that if he is told
it.  And, if not, the consequences will follow.

THE COURT:  All right.

MS. EVANS:  Your Honor, may I speak?  May I say
something?

THE COURT:  Go ahead.

IBF5benO                          Order To Show Cause

 1          MS. EVANS:  Okay.  Thank you, your Honor.

 2          When they're talking about the contract, it's not a

 3  contract that we have with Benthos, it is with another company

 4  that has it with Benthos.  And I have a copy of the contract

 5  that they have with that client.

 6          MR. ETRA:  Who is not present in this hearing.

 7          MS. EVANS:  We were trying to -- it is true,

 8  everything Mr. Etra says is true.  It is 1,000 Bitcoins was the

 9  minimum amount that was needed.  Now, because they didn't have

10  it the client was trying to do, find another client that would

11  fill up the void and then those two together would be able to

12  get the entire amount of Bitcoins that they paid for, the whole

13  thing would have been over.  But, as early as yesterday,

14  although it seems like unfortunately it was the day before the

15  Court date, they did give us a signed contract last night that,

16  for the other 250 that would make up the entire amount, so

17  therefore they could go forward and everybody would get their

18  Bitcoins and this would be over.

19          This happened last night, they're not aware of it, but

20  we didn't have a signed contract until last night.

21          MR. BROMBERG:  May I be heard, your Honor?

22          MR. ETRA:  Your Honor --

23          THE COURT:  Mr. Etra, please.  I am listen to

24  Mr. Bromberg.

25          MR. BROMBERG:  All of this is ultimately irrelevant,

1    your Honor, because the contract has long since been

2    terminated.

3              MS. EVANS:  You have not seen this one.

4              MR. BROMBERG:  The contract between Benthos and

5    Valkyrie has long since been terminated.  The escrow with

6    Mr. Etra has long since been terminated.  Mr. Etra is under an

7    obligation to return whatever amount of the $5 million he still

8    holds and, for whatever reason, he has not done so.

9              MR. POPOFSKY:  He admits he has $400,000.  He ought to

10   return that today, your Honor, and then provide the information

11   as to the rest of it tomorrow.

12             MR. ETRA:  Your Honor, as Ms. Evans indicated, the two

13   of us are truly the innocent people in this arrangement.

14             THE COURT:  Well, I'm not making findings on guilt and

15   innocence.  So far this isn't a criminal case.

16             MR. ETRA:  Yes.

17             THE COURT:  All right?  So far.

18             MR. ETRA:  Okay.

19             THE COURT:  Listen to me.

20             MR. ETRA:  Please.

21             THE COURT:  Listen to me.

22             You are an officer of the court.  You have ignored

23   Court orders.  You have not done anything that the Courts have

24   ordered you to do.  Accordingly, I am going to ask Mr. Bromberg

25   and Mr. Popofsky, how much time do you need to file a motion to

IBF5benO                              Order To Show Cause

1      hold both Mr. Etra and Ms. Evans in civil contempt?

2                  MR. BROMBERG:  Three or four days, your Honor.

3                  THE COURT:  Three or four days.  All right.

4                  Please make that motion.  Make sure they get copies of

5      it.

6                  MR. POPOFSKY:  Of course.

7                  MR. BROMBERG:  They will, your Honor.

8                  THE COURT:  Then, five days after that the defendants

9      must respond, no extensions.  The Court will then take it under

10     advisement and make a ruling.

11                 Now, based on what I have seen so far it looks very

12     likely that a motion to hold you in civil contempt will be

13     granted.  So, it seems to me it's in your interest -- as I said

14     earlier, you hold the keys.  You don't want to go to jail, you

15     tell them everything that you were supposed to tell them weeks

16     ago.  If you don't do that, they make the motion, you have an

17     opportunity to respond and there will be no extensions; if you

18     don't respond, their motion will be unopposed, I will grant it,

19     and you will be going to jail.

20                 Do you understand this?

21                 MR. ETRA:  Yes, your Honor.

22                 THE COURT:  All right.

23                 MS. EVANS:  Yes, your Honor.

24                 THE COURT:  No.

25                 MS. EVANS:  I would like to ask if that was -- if what

1    I gave them is adequate because I gave them everything they

2    asked for.

3            THE COURT:  You talk to them afterwards because in

4    that case maybe he won't --

5            MS. EVANS:  Can we speak then after court?  Are we

6    allowed to.

7            THE COURT:  Are you willing to talk to them after

8    court?

9            MR. BROMBERG:  We will certainly speak to them, your

10   Honor.

11           THE COURT:  All right.

12           MR. POPOFSKY:  We will speak to them.

13           Your Honor, why would Mr. Etra not return the

14   $400,000?  Could Mr. Etra either return the $400,000 -- he has

15   our wire transfer information which we have given him -- can he

16   return it to us or deposit into court tomorrow?  Is there any

17   reason for him not do that?  He admits he is holding it.

18           MR. ETRA:  Your Honor, the answer to that question,

19   again if counsel would consult with their client, the $400,000

20   is in the interest of their client because if it is put into

21   court or returned to them, it can't be utilized to give them

22   Bitcoins to which they are looking forward to receiving.

23           THE COURT:  I don't know that they're looking forward.

24           MR. POPOFSKY:  We spoke to our clients last night,

25   your Honor.  After Ms. Evans emailed them and gave them the

1    same run around she has given them for three months and it was

2    clear between ourselves and our clients that, once again, we

3    don't believe them.  We just want the money back.  The contract

4    was terminated a month ago and Mr. Hess admits he is holding

5    $400,000 of our client's money.  We want it back.

6              MR. ETRA:  Mr. Hess is not holding the money.

7              MR. POPOFSKY:  Why will he not give it back?

8              MS. EVANS:  Mr. Hess?

9              MR. POPOFSKY:  Mr. Etra.  I apologize.  Why will he

10   not give it back?

11             THE COURT:  It seems to me that what I have directed

12   will perhaps move this along but I am telling you, do not make

13   any plans for the holiday because if you do not comply with the

14   order signed by Judge Castel on October 17th, and by me on

15   October 19th, the motion will be made for civil contempt, I

16   gave you an opportunity, five days to respond, no extensions.

17   If you don't, it will be unopposed, it will be granted, and you

18   will be going to jail.

19             Now --

20             MR. ETRA:  Your Honor?

21             MS. EVANS:  Your Honor?

22             THE COURT:  -- I am ordering this record on a daily

23   basis.  The plaintiffs are to see our court reporter, Ms. Pam

24   Utter, to make payment arrangements.  I expect to be getting

25   the motion for civil contempt.  I expect to get a response by

1   the defendants and if you don't, there will be no extensions so

2   you get it within the five days that I gave you or you are

3   waiving a response.

4           If, on the other hand, Mr. Etra, you feel that you can

5   give the money back, that would be a big help and perhaps get

6   you out of civil contempt but there are other bits of

7   information that you must supply as well.

8           MR. ETRA:  Yes, your Honor, and I think we will show

9   that Ms. Evans has supplied much the same.

10          Question, your Honor.  If there is information that is

11  privileged or private --

12          THE COURT:  How can it be privileged or private?  You

13  owe these people the answer as to where their money was sent.

14          MR. ETRA:  Yes, your Honor.  The point is, as you will

15  appreciate, again, Ms. Evans and I are not the parties of

16  interest in this.  We are here to --

17          THE COURT:  You are holding the escrow.  That's what

18  they want.

19          MR. ETRA:  Yes.

20          THE COURT:  So you are a party, not necessarily to the

21  underlying contract, but certainly to what is before me --

22          MR. ETRA:  Yes.

23          THE COURT:  -- which is get this information to them

24  in aid of arbitration.

25          MR. ETRA:  Yes.

IBF5benO                         Order To Show Cause

1                THE COURT:  All right?

2                MS. EVANS:  In aid of arbitration.

3                MR. POPOFSKY:  Your Honor, can I add one thing?

4                I apologize for harping on this but there is no

5     outstanding order on the $400,000 other than restraining it and

6     I cannot see any legal reason why Mr. Etra should be holding

7     the money any longer.  We should be getting it back.

8                THE COURT:  All right.

9                Direct order --

10               MR. ETRA:  Your Honor --

11               THE COURT:  Listen to me:  Return the $400,000 to the

12    plaintiff immediately.

13               MR. POPOFSKY:  Thank you, your Honor.

14               THE COURT:  All right.  This matter is adjourned.

15    Please, see Ms. Utter.  Please, take advantage of the

16    hospitality of my courtroom and talk to each other but I am

17    warning you, Ms. Evans, Mr. Etra, pack your toothbrush.

18               This matter is adjourned.

19                             o0o

20

21

22

23

24

25