# The Law Office of David S. Hammer

500 Fifth Ave., 34th Fl. ● New York, NY 10110 ● (212) 941-8118 ● Fax: (212) 764-3701

December 9, 2018

**BY ECF and E-Mail**

Hon. Deborah A. Batts
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 24B
New York, NY 10007

    Re:    <u>Benthos v. Etra and Evans, Case No. 18-cf-9401 (DAB)</u>

Dear Judge Batts:

    I write in response to the December 4, 2018 letter of Steven Popofsky, submitted in further support of Petitioner's motion for contempt. Stripped of the by-now ritual denunciation of Aaron Etra ("Etra") as a liar (his "credibility is zero") and quasi-criminal (as supposedly shown by a four year old summary judgment decision in a civil case), this letter consists of an accusation that Etra has not produced important communications with the other participants in the Bitcoin Transaction. Mr. Popofsky therefore demands that Etra be required to: (1) produce emails with those participants electronically so that metadata can be examined, (2) submit his computer and phone to forensic examination, (3) appear for a deposition, and (4) reimburse Benthos for its litigation costs.

    What is remarkable about Mr. Popofsky's letter is that it was filed an hour or two before I turned over 175 pages of additional emails involving the Bitcoin Transaction; these were the "Supplementary Buyer" emails that Etra initially had withheld on the ground they fell outside this Court's October 19th Order. Mr. Popofsky knew I was about to produce these emails – indeed, he says so in his letter – yet for some reason thought it appropriate to file papers immediately before their production which accuse Etra of withholding the very emails he knew I was about to produce.

    In any event, Etra has now produced 545 pages of communications. This is a substantial corpus of material, considering that only four months has elapsed since the inception of the Bitcoin Transaction. Etra also has provided Mr. Popofsky with an affidavit stating that he (Etra) has turned over every communication in his possession between and among any of the participants in the Bitcoin Transaction that was sent during calendar year 2018. In other words, Etra avers that he has withheld nothing: every such communication, regardless of subject matter, has been produced.

In the face of this affidavit, what reason is there to conclude that Mr. Etra has additional emails in his possession that he is for some reason concealing? The only basis Mr. Popofsky provides is his intuition: counsel simply cannot believe that the documents he has received (over 30% of which he had not even read at the time he wrote the letter) constitute the entire corpus of communications concerning the Bitcoin Transaction. It does not seem to occur to Mr. Popofsky that some of the participants in that transaction may have communicated with each other by telephone, or by an email chain on which Mr. Etra was not "cc'd".

Mr. Popofsky's skepticism about Etra's assurances, while understandable in counsel for Etra's litigation adversary, does not justify a new round of expensive and highly intrusive discovery. This is especially so in light of the very limited purposes of the present action. I respectfully remind the Court that Benthos has agreed to arbitrate any dispute arising from the Bitcoin Transaction, and that its original justification for commencing this action was to obtain an injunction in aid of that arbitration. Petition for Preliminary Injunctive Relief in Aid of Arbitration, Document 1, Pacer file for this action at 2, 16.

In seeking this injunction, Benthos cited the authority of CPLR 7502(c). That rule authorizes a court to grant:

> a preliminary injunction in connection with an arbitration that is pending or that is to be commenced. . . but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without such provisional relief. . . .

The purpose of a 7502(c) injunction then is to *preserve* the effectiveness of pending or anticipated arbitrations, not to usurp the authority of arbitrators to determine the rights of the parties. Weinstein-Korn-Miller, New York Civil Practice ¶ 7502(6) at 75-105 (2014). For that reason, courts presiding over a 7502(c) proceeding are mandated by the CPLR "to refrain from intruding too deeply into the underlying dispute." Id. at ¶ 7502.20[1] at 75-119 (2014), citing Nationwide Gen. Ins. Co. v. Investors Ins. Co. of America, 37 N.Y.2d 91, 371 N.Y.S.2d 463, 332 N.E.2d 333 (1975) ("The ultimate disposition of the merits is, of course, reserved for the arbitrators. . .") It follows that the role for discovery in a 7502(c) proceeding is highly circumscribed. "Under the CPLR, the court may order discovery in connection with an application before it, but it should not . . . order disclosure on issues which will be before the arbitrators." Id. at 75-104.

These considerations determine the result in this matter. Mr. Popofsky poses a long list of questions, including "[w]hy did Etra disburse money from escrow on instructions from Dmitri Kaslov, when the Escrow Agreement required him to take instructions only from contracting parties", and "why did Etra send Benthos's money to Hong Kong"? But these questions are not pertinent to preserving the effectiveness of a future arbitration; to the contrary, they go to the merits of the central claim in that arbitration – the claim that Aaron Etra breached the Escrow

Agreement.  Benthos has agreed to resolve that claim by arbitration, not by a civil proceeding in federal court.  Petitioner should not be permitted to circumvent the limits of arbitration-related discovery by falsely describing its requests as serving the purposes of CPLR 7502(c).[1]

This brings us to an additional point.  In its effort to ensure that 7502(c) proceedings remain limited, the CPLR provides that:

> If an arbitration is not commenced within thirty days of the granting of the provisional relief, the order granting such relief shall expire and be null and void and costs, including reasonable attorney's fees, award to the respondent.  The court may reduce or expand this period of time for good cause shown.

It is now approximately 50 days since provisional relief was granted in this case, and Benthos has yet to take the first step towards commencing arbitration.  Instead, it has sought to extend the present proceeding indefinitely in order to enlarge the discovery normally available in arbitration as well as pressure Mr. Etra into some concession or settlement he would not otherwise make.

## **CONCLUSION**

As of the date of this letter, Mr. Etra has complied with all orders of this Court, having returned all money in his IOLA account remaining from the sum originally deposited by Benthos, and produced all communications in his possession involving the participants in the Bitcoin Transaction.  The original purposes of this proceeding, as set out in Benthos's original petition for an order to show cause, have thus been satisfied, and the time limitations for its pendency as established by the CPLR have been exceeded. For these reasons, we respectfully ask the Court to: (1) deny Petitioner's motion for contempt, (2) terminate the present action, and (3) refer Benthos to its remedies at arbitration.

Very truly yours,

*David S. Hammer*

David S. Hammer

---

[1]     Mr. Popofsky asks the Court to award Benthos damages in the amount of its reasonable legal costs.  But such damages would only be justified by proof that Etra had breached the Escrow Agreement, since the Escrow Agreement was the only source of the duties Benthos claims Etra violated.  For that reason, the issue of damages should be determined by the same fact-finder that determines Benthos's breach of contract claim – the arbitrator or arbitrators selected to render judgment.  And here we add that, in any such proceeding, Mr. Etra will have an opportunity to prosecute his own claim for damages, on the theory that he did not violate his duties under the Escrow Agreement.