**KLEINBERG KAPLAN**

*Direct Dial: 212.880.9882*
*E-Mail: spopofsky@kkwc.com*

December 11, 2018

**BY ECF**

Hon. Deborah A. Batts
United States District Judge
Southern District of New York
500 Pearl Street, Courtroom 24B
New York, NY 10007

Re: **Benthos v. Etra and Evans, Case No. 18-cv-9401 (DAB)**

Dear Judge Batts:

    I write in brief reply to the specific new points and arguments raised by Aaron Etra's counsel in his letter of December 9 (Dkt. 28). This letter supplements my letters of November 27 (Dkt. 21) and December 4 (Dkt. 26), as the arguments in those letters remain valid.

    <u>Supposedly Complete Document Production</u>. Counsel contends that Etra has now "turned over every communication in his possession between and among any of the participants in the Bitcoin Transaction that was sent during calendar year 2018." However, he has not (for example) turned over a single document pre-dating the execution of the contract documents (such as drafts, transmission of the contracts to the signatories, or any exchanges about how any of this came about at all).[1] Thus, unless this transaction was an "immaculate conception" – with signed contracts just appearing out of thin air – Etra is either again speaking falsely, or documents he formerly had "in his possession" have somehow disappeared (which of course would raise still more questions). Only a deposition (and forensic examination) can clear this up.

    <u>"In Aid of Arbitration</u>." Counsel correctly points out that a court order should be granted "upon the ground that [any arbitration] award to which the applicant may be entitled may be rendered ineffectual without such provisional relief." *Petitioner still wants to know: Who has received, and who is now controlling, its missing $4.6 million?* Etra was first asked this question on August 31; as escrow agent, he should have answered it then, and he still has not answered it (nor the host of other questions he has been asked repeatedly, including those set forth in italics

---

[1] Indeed, before signing the contract documents, Benthos asked Etra for "know your customer" background information on "Dmitri," whom Etra had put forward as the ultimate seller of the Bitcoin. Etra's response was that although he himself had information about Dmitri, petitioner's contracting counterparty would be only Valkyrie, not Dmitri, and therefore he would not provide anything about Dmitri. We also know from text messages that Etra was actively making changes in the draft contract documentation prior to execution. These are only by way of examples to demonstrate that there is an entire pre-contracting history between and among Etra and the others involved in this transaction. *Etra continues to conceal all of that.*



on page 3 of my December 4th letter). Etra is continuing to hide something, and protect someone, and this has been going on now for 100 days and counting.

The documents he has produced do not tell us what we need in order to "follow the money" and try to prevent any arbitration award – not necessarily against Etra, but against others (the ones who have the money, which was sent to them by Etra) – from being rendered ineffectual. *Only a deposition can do that.*

Legal Fees. Petitioner is not seeking its arbitration damages against Etra. It is merely seeking, as authorized by Local Civil Rule 83.6 (see also the authority cited at p. 7 of Dkt. 17), the costs occasioned by Etra's undenied contempt of court. Even on his own counsel's view, Etra was not in compliance with the Court's October 19th Order (nor with the requests made to him as Escrow Agent on August 31 and September 28) until December 4th (and he still is not in compliance as discussed above). Petitioner has incurred tens of thousands of dollars of legal fees – including in filing a contempt motion invited by the Court – as a result of Etra's continued contempt of court, and all of that is legally compensable (and in addition, Etra should be sanctioned for his misrepresentations in court as set forth at pp. 7-8 of Dkt. 17).

Initiation of Arbitration. This Court has not yet issued its final order (nor, indeed, any order) granting "provisional relief in aid of arbitration." The suggested notion that petitioner was required to commence arbitration thirty days after the mere bringing of this petition (Dkt. 28 at p. 3), without regard to when the requested relief is obtained, is thoroughly meritless.

This is not a formalistic exercise. The point of this petition was to obtain information and documents concerning where Etra sent petitioner's money, where it has gone, who is controlling it, who has the power to return it, and how the responsible parties can be located and held accountable in arbitration. *Etra knows all that, and continues to conceal it.* Justice would not be served if he could stonewall for 100 days, keep petitioner in the dark, and walk away without revealing everything that he knows and without compensating Benthos for the costs he has caused Benthos to incur. Substantive relief in arbitration is for another day; this proceeding is for information, which Etra thus far has successfully refused to divulge. The Court should not permit itself to be sidestepped in such a fashion.

Accordingly, petitioner requests that (1) its contempt motion be granted, on such terms as the Court deems just under the circumstances, but by all means including (as authorized by law) reimbursement of petitioner's legal fees occasioned by Etra's contempt of court; and (2) independent of any contempt remedies, the Court should order Etra – in aid of arbitration – at a bare minimum to appear for a deposition, in addition to making his computer(s) and phone(s) available for forensic examination (at his expense) and producing his documents electronically with metadata. Benthos thanks the Court for its ongoing attention to this matter.

Respectfully yours,

*Steven Popofsky* (by JKB)

Steven R. Popofsky

cc:   David Hammer (by ECF)